# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Thomas Allen Phillips, Kevin D. Murphy, Michael Egger,<br><br>          Plaintiffs, on behalf of themselves and all others similarly situated<br><br>v.<br><br>Boilermaker-Blacksmith National Pension Trust; Board of Trustees of the Boilermaker-Blacksmith National Pension Trust; Scott Anderson, Trustee of the Boilermaker-Blacksmith National Pension Trust; John T. Fultz, Trustee of the Boilermaker-Blacksmith National Pension Trust; Lawrence J. McManamon, Trustee of the Boilermaker-Blacksmith National Pension Trust; Lyndal Turner, Trustee of the Boilermaker-Blacksmith National Pension Trust; Mike Hidas, Trustee of the Boilermaker-Blacksmith National Pension Trust; Mark Vandiver, Trustee of the Boilermaker-Blacksmith National Pension Trust,<br><br>          Defendants. | Case No.:  19-CV-02402 |

## CLASS ACTION COMPLAINT

Plaintiffs Thomas Allen Phillips, Kevin D. Murphy and Michael Egger, by and through undersigned counsel,  bring this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* to recover benefits due, declare their rights and remedy violations of the terms of the Boilermaker-Blacksmith National Pension Trust and ERISA. On behalf of themselves and all others similarly situated, Plaintiffs allege that Defendants have violated and are violating the terms of the pension plan and ERISA by, *inter alia*: purporting to define and limit the right to retire and collect benefits under the Plan;

imposing *ad hoc* and *de facto* retroactive Plan rules and/or amendments that purport to restrict Plaintiffs' eligibility for retirement benefits; violating multiple provisions of ERISA Title 1 and the terms of the Plan governing disclosure, vesting and accrual of benefits, fiduciary responsibility and administration and enforcement; and failing to maintain and follow reasonable claims procedures as required under ERISA.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to § 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2.      Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 as the breach took place and the pension plan is administered in the District of Kansas, and Defendants are headquartered in this District.

## PARTIES

3.      At various times from in or around 1979 through in or around April 2017, Plaintiff Thomas Allen Phillips ("Mr. Phillips") was employed as a boilermaker by various employers that had collective bargaining agreements pursuant to which employers were required to contribute to the Boilermaker-Blacksmith National Pension Trust ("Plan").

4.      Mr. Phillips is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

5.      At various times from in or around 1980 through on or about June 8, 2017, Plaintiff Kevin D. Murphy ("Mr. Murphy") was employed as a boilermaker by various employers that had collective bargaining agreements pursuant to which employers were required to contribute to the Plan.

6.      Mr. Murphy is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

7.      At various times from in or around 1975 through in or around July 2012, Plaintiff Michael Egger ("Mr. Egger") was employed as a boilermaker by various employers that had

collective bargaining agreements pursuant to which employers were required to contribute to the Boilermaker-Blacksmith National Pension Trust ("Plan").

8.    Mr. Egger is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

9.    Defendant Plan is a defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants working as Boilermakers, including Plaintiffs and their beneficiaries.

10.    Defendant Board of Boilermaker-Blacksmith National Pension Trust is the Administrator of the Plan ("Board") and a fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

11.    Defendant Scott Anderson at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

12.    Defendant John Fultz at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

13.    Defendant Mike Hidas at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

14.    Defendant Lawrence McManamon at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

15.    Defendant Lyndal Turner at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

16.     Defendant Mark Vandiver at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

## GENERAL ALLEGATIONS

17.     Prior to his retirement in 2017, at various times from in or around 1979 through on or about April 4, 2017, Mr. Phillips worked as a Boilermaker for various employers that had contracts with the International Brotherhood of Boilermakers and that had signed pension agreements requiring the employer to make contributions to the Plan.

18.      By virtue of his covered employment, Mr. Phillips became vested and earned nonforfeitable rights to his accrued benefits under the Plan.

19.     Mr. Phillips' last job as a Boilermaker prior to his retirement was with Chicago Building & Iron in Oswego, New York.

20.     Mr. Phillips' last job as a Boilermaker ended on or about April 4, 2017 when he was laid off from Chicago Building & Iron.

21.     Mr. Phillips has not worked as a Boilermaker at any time since on or about April 4, 2017.

22.     Prior to his retirement in 2017, at various times from in or around 1980 through on or about June 8, 2017, prior to his retirement, Mr. Murphy worked  as a Boilermaker for various employers that had contracts with the International Brotherhood of Boilermakers and that had signed pension agreements requiring the employer to make contributions to the Plan.

23.     By virtue of his covered employment, Mr. Murphy became vested and earned nonforfeitable rights to his accrued benefits under the Plan.

24.     Mr. Murphy's last job as a Boilermaker prior to his retirement was with Day and Zimmerman.

25.     Mr. Murphy's work as a Boilermaker ended on or about June 8, 2017.

26.     Mr. Murphy has not worked as a Boilermaker at any time since on or about June 8, 2017.

27.     Prior to his retirement in 2017, at various times from in or around 1975 through on or about July 25, 2012, prior to his retirement, Mr. Egger worked as a boilermaker for various employers that had contracts with the International Brotherhood of Boilermakers and that had signed pension agreements requiring the employer to make contributions to the Plan.

28.     By virtue of his covered employment, Mr. Egger became vested and earned nonforfeitable rights to his accrued benefits under the Plan.

29.     Mr. Egger's last job as a Boilermaker prior to his retirement was with Harder Mechanical.

30.     Mr. Egger's last job as a Boilermaker ended on or about July 25, 2012 when he was laid off from Harder Mechanical.

31.     Mr. Egger has not worked as a Boilermaker at any time since on or about July 25, 2012.

32.     Normal Retirement Age under the Plan is, in relevant part, age 65.

33.     The Plan provides for early retirement pensions for Participants who are at least age 55 but less than 65 and meet other early retirement eligibility requirements for an early retirement pension including years and hours of service requirements set forth in Section 4.07 of the Plan.

34.     Each of the Plaintiffs retired on an early retirement pension prior to age 65.

35.     Section 8.08 of the Plan defines retirement under the Plan and the limitations on post-retirement employment.

36.     With respect to participants who retire before normal retirement age, Section 8.08(a) ("Disqualifying Employment") provides in relevant part:

(a) **Before Normal Retirement Age**. Effective July 1, 2010, to be considered retired and entitled to a pension under this Plan before he has attained Normal Retirement Age, a Participant must withdraw completely and refrain from employment or self-employment for an employer which performs work in an industry traditionally

5

> covered by a Collective Bargaining Agreement:
> (1) where the employment or self-employment is in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States; or
> (2) where the employment or self-employment includes any direct supervision of a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States in the construction industry.

37.    Section 1.06 of the Plan defines and limits the term "Collective Bargaining Agreement" as used in the Plan as collective bargaining agreements between the International Brotherhood of Boilermakers and an Employer as follows:

> An agreement in effect at the time of reference between the International Union and/or any of its Local Lodges and an Employer, an Employer Committee or an Employer Association which requires the Employers covered thereby to contribute to the Trust

38.    The only restriction on Plaintiffs' rights to retire and receive benefits under the Plan before Normal Retirement Age is to refrain from working following retirement and in employment or self-employment in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States with multiple exceptions that permit work in Boilermaker job classifications under certain circumstances.

39.    At no time subsequent to their retirement did any Plaintiff work for an employer or engage in self-employment as a Boilermaker (i.e., a job classification of the type included in a Collective Bargaining Agreement as defined under the Plan).

40.    Aside from the exceptions that permit certain Boilermaker work following retirement, Section 8.08 sets forth the only definition of retirement and the only restrictions on the right to engage in post-retirement employment.

41.    Under the Plan, if a participant works following retirement and before Normal Retirement Age in employment or self-employment in a job classification of the type included in

a Collective Bargaining Agreement anywhere in the United States, the participant's retirement benefits may be suspended by the Plan.

42.     The Plan § 4.07 provides that a participant is entitled to commence receiving early retirement benefits if he has attained a combination of various ages and years of service and has filed a written application for benefits.

43.     Each of the Plaintiffs satisfied the age and service requirements for early retirement benefits under the Plan.

44.     Mr. Phillips submitted a retirement application to Defendants on or about April 14, 2017 and commenced receipt of pension benefits with a retroactive effective date of May 1, 2017.

45.     Mr. Murphy submitted a retirement application to Defendants on or about July 10, 2017 and commenced receipt of pension benefits with a retroactive effective date of August 1, 2017.

46.     Mr. Egger submitted a retirement application to Defendants on or about June 5, 2017 and commenced receipt of pension benefits with a retroactive effective date of July 1, 2017.

47.     When Plaintiffs retired, they intended to and did retire from working as Boilermakers under the Plan and had no intention to work as Boilermakers under the Plan following retirement.

48.     At the time of his retirement effective May 1, 2017, Mr. Phillips was not working in employment for an employer in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States at the time of his retirement.

49.     Mr. Phillips has not worked in a job classification of the type included in a

Collective Bargaining Agreement anywhere in the United States since on or about April 4, 2017.

50.    In addition to being a journeyman Boilermaker, Mr. Phillips is a licensed electrician and has worked as an electrician at various times since 1998 when he was not employed as a Boilermaker.

51.    On or about June 14, 2017, well over two months (71 days) after his last job as a Boilermaker had ended, Mr. Phillips took as job as an *electrician* for Day & Zimmerman in Athens, Alabama.

52.    Mr. Phillips' work as an electrician is not employment of the type included under a Collective Bargaining Agreement with the International Brotherhood of Boilermakers; rather, as an electrician for Day & Zimmerman, Mr. Phillips' work was covered by an entirely different union under an entirely different collective bargaining agreement between the International Brotherhood of Electrical Workers ("IBEW") and the employer.

53.    Mr. Phillips' work as an electrician for Day & Zimmerman is not post-retirement employment that constitutes Disqualifying Employment that is prohibited under § 8.08 of the Plan.

54.    The IBEW maintains its own pension plan which is not affiliated in any way with the Boilermakers Plan and Mr. Philips has earned credited service under the IBEW Plan for service that is not covered and for which no benefits were earned under the Boilermakers Plan.

55.    Mr. Murphy was not working in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States at the time of his retirement.

56.    Mr. Murphy has not worked in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States since on or about June 8, 2017 when his employment with Day and Zimmerman ended.

8

57.     On or about August 28, 2017, 11 ½ weeks after Mr. Murphy's employment as a Boilermaker had ceased, Mr. Murphy began working as a Consulting Safety Coordinator for Day & Zimmerman.

58.     Mr. Murphy's work as a Consulting Safety Coordinator is not employment of the type included under a Collective Bargaining Agreement with the International Brotherhood of Boilermakers.

59.     Mr. Murphy's work as a Consulting Safety Coordinator for Day & Zimmerman is not post-retirement employment that constitutes Disqualifying Employment that is prohibited under § 8.08 of the Plan.

60.     Mr. Egger was not working in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States at the time of his retirement.

61.     Mr. Egger has not worked in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States since on or about July 25, 2012, nearly five years prior to his retirement, when his employment with Harder Mechanical ended.

62.     On or about February 23, 2017, approximately four years and seven months after Mr. Egger's employment as a Boilermaker had ceased, Mr. Egger began working as a Steamfitter for Cherne Contracting/Kiewit Corporation.

63.     Mr. Egger's work as Steamfitter is not employment of the type included under a Collective Bargaining Agreement with the International Brotherhood of Boilermakers; rather, as steamfitter for Cherne Contracting/Kiewit Corporation, Mr. Egger's work was covered by an entirely different union under an entirely different  collective bargaining agreement between the United Association of Plumbers, Fitters, Welders & Service Techs and the employer.

64.     Mr. Egger's work as a Steamfitter is not employment of the type included under a Collective Bargaining Agreement with the International Brotherhood of Boilermakers.

65.     Mr. Egger's work as a Steamfitter for Cherne Contracting/Kiewit Corporation is not post-retirement employment that constitutes Disqualifying Employment that is prohibited under § 8.08 of the Plan.

66.     None of the Plaintiffs had contributions made to the Plan on their behalf and were not engaged in Credited Service as that term is defined under the Plan following their retirements.

67.     More than a year after his retirement, Mr. Phillips received a letter from Defendants dated September 20, 2018 stating without citing a single Plan provision upon which Defendants purported to rely, *inter alia*, that because he began employment with an employer who contributes to the Plan after he began receiving retirement benefits, (albeit in an entirely different trade and craft and not under a collective bargaining agreement with the International Brotherhood of Boilermakers), Mr. Phillips purportedly "did not separate from service and [is] not eligible for pension benefits."

68.     The September 20, 2018 letter also stated that Mr. Phillips' pension benefits had purportedly been overpaid from May 2017 (the date of his retirement) through the date of the letter.

69.     More than a year after his retirement, Mr. Murphy received a letter from Defendants dated November 21, 2018 stating without citing a single Plan provision upon which Defendants purported to rely, *inter alia*, that because he began employment with an employer who contributes to the Plan after he began receiving retirement benefits, (albeit in an entirely different trade and craft and not under a collective bargaining agreement with the International

10

Brotherhood of Boilermakers), Mr. Murphy purportedly "did not separate from service and [is] not eligible for pension benefits."

70.    The November 21, 2018 letter also stated that Mr. Murphy's pension benefits had purportedly been overpaid from August 2017 (the date of his retirement) through the date of the letter.

71.    More than a year and a half after his retirement, Mr. Egger received a letter from Defendants dated March 5, 2019 stating without citing a single Plan provision upon which Defendants purported to rely, *inter alia*, that because he began employment with an employer who contributes to the Plan after he began receiving retirement benefits, (albeit in an entirely different trade and craft and not under a collective bargaining agreement with the International Brotherhood of Boilermakers), Mr. Egger purportedly "did not separate from service and [is] not eligible for pension benefits."

72.    The March 5, 2019 letter also stated that Mr. Egger's pension benefits had purportedly been overpaid from August 2017 (the date of his retirement) through the date of the letter.

73.    In contravention of ERISA regulations, no reference to Plan or statutory provisions upon which the determination to terminate benefits and seek recoupment were purportedly based were cited in the Plan's September 20, 2018 letter to Mr. Phillips, the Plan's November 21, 2018 letter to Mr. Murphy, or the Plan's March 5, 2019 letter to Mr. Egger, nor were Mr. Phillips, Mr. Murphy or Mr. Egger provided with a description of the additional material or information necessary to perfect their claims and why such information is necessary.

74.     After receiving the November 21, 2018 letter and prior to his appeal, Mr. Murphy called Defendants to request the specific Plan and ERISA violation that Defendants relied on in denying his appeal.

75.     Despite Mr. Murphy's requests for the specific Plan and statutory provisions upon which the Plan terminated his benefits, Defendants failed to provide him with any additional information prior to denying his appeal other than referring him to the claims and appeal provision of the Plan and providing him with a copy of the pension file along with his pension application.

76.     Mr. Phillips timely appealed the Plan's September 20, 2018 determination terminating his benefits.

77.     By letter dated December 18, 2018, Defendants denied Mr. Phillips' appeal.

78.     The December 18, 2018 letter denying Mr. Phillips' appeal cited and purported to rely on Plan provisions and Treasury regulations that were not cited in the September 20, 2018 letter terminating Mr. Phillips' retirement benefits and as to which Mr. Phillips had no opportunity to address and explain why such provisions do not authorize the termination of Mr. Phillips' benefits.

79.     The December 18, 2018 appeal denial stated that Mr. Phillips' pension benefits would be terminated effective January 1, 2019 purportedly because of his "failure to have a bona fide separation from service."

80.     The  December 18, 2018 letter also stated that Mr. Phillips had been overpaid a total of $41,801.40 and that he would have to reapply for his pension benefits and establish a new Annuity Starting Date and that once he did so, his monthly benefits would be reduced until the purported overpayment was fully recovered.

81.    By letter dated February 8, 2019, Mr. Phillips requested documents from the Plan Administrator, including, inter alia, the collective bargaining agreements in effect under which he worked and/or pursuant to which contributions were made on his behalf.

82.    By letter dated March 15, 2019, the Plan Administrator provided some documents to Mr. Phillips but refused to provide any of the collective bargaining agreements he had requested, stating: "We are unable to comply with your request for copies of all Collective Bargaining Agreements under which contributions were made on your behalf as you worked for many different employers during the time contributions were made on your behalf."

83.    As of the date of the filing of this Complaint, the Plan Administrator still has not provided a single collective bargaining agreement to Mr. Phillips in response to his request for documents.

84.    Defendants' failure and refusal to provide the requested collective bargaining agreements did not result from circumstances beyond their control; the Plan Administrator maintains the requested collective bargaining agreements at the Plan Administrator's office.

85.    Mr. Phillips' monthly benefits were terminated on January 1, 2019 and have not recommenced.

86.    Mr. Murphy timely appealed the Plan's November 21, 2018 determination terminating his benefits.

87.    By letter dated March 28, 2019 Defendants denied Mr. Murphy's appeal.

88.    The March 28, 2019 letter denying Mr. Murphy's appeal cited and purported to rely on Plan provisions and Treasury regulations that were not cited in the November 21, 2018 letter terminating Mr. Murphy's retirement benefits nor provided to Mr. Murphy in response to his inquiries to Defendants prior to his appeal.

89.     Mr. Murphy had no opportunity to address and explain why the provisions first cited in the letter denying Mr. Murphy's appeal do not authorize the termination of Mr. Murphy's benefits.

90.     The March 28, 2019 appeal denial stated that Mr. Murphy's pension benefits would be terminated effective May 1, 2019 purportedly because of his "failure to have a bona fide separation from service."

91.     The March 28, 2019 letter also stated that Mr. Murphy had been overpaid a total of $127,199.94 and that he would have to reapply for his pension benefits and establish a new Annuity Starting Date and that once he did so, his monthly benefits would be reduced until the purported overpayment was fully recovered.

92.     Mr. Murphy's monthly benefits were terminated on May 1, 2019 and have not recommenced.

93.     Mr. Egger timely appealed the Plan's March 5, 2019 determination terminating his benefits.

94.     By letter dated May 3, 2019 to the Plan Administrator, Mr. Egger requested documents, including, *inter alia*, collective bargaining agreements requiring contributions to the Plan.

95.     By letter dated May 8, 2019, which was not received until May 15, 2019, the Plan Administrator stated that it would not provide a single collective bargaining agreement Mr. Egger requested, stating: "At this time, we are unable to comply with your request for copies of all Collective Bargaining Agreements requiring contributions to the National Plan."

96.     By letter dated May 23, 2019, which was not received until May 28, 2019, the Plan Administrator sent a "follow up to [Mr. Egger's] request for copies of all Collective

Bargaining Agreements (CBAs) requiring contributions to the Pension Plan, stating that the collective bargaining agreements were "not relevant" Mr. Egger's appeal and that "the Fund Office can provide specific CBAs if requested."

97.    In response to the Plan's May 23, 2019 letter, by letter dated May 31, 2019, Mr. Egger requested that the Plan Administrator provide copies of the collective bargaining agreement with Cherne Contracting Corp., in Eden Prairie, Minnesota and with Kiewit Corporation in effect from February 2017 through September 2017.

98.    By letter dated June 20, 2019, Mr. Egger made his third request for copies of the collective bargaining agreements.

99.    Despite Mr. Egger's written requests, the Plan Administrator has failed to provide a single collective bargaining agreement; instead, the Plan Administrator sent a letter dated July 3, 2019, which was not received until July 8, 2019 stating that, "[b]oth Cherne Contracting Corp. and Kiewit Corporation are covered under multiple CBAs requiring contributions to the Pension Trust; therefore you will need to provide the Pension Trust with the name of the specific CBA(s) you are requesting. If you are unsure of the name please provide the State in which the work was being performed."

100.    As of the date of the filing of this Complaint, the Plan Administrator has not provided a single collective bargaining agreement to Mr. Egger in response to his multiple requests for the collective bargaining agreements.

101.    Defendants' failure and refusal to provide the requested collective bargaining agreements did not result from circumstances beyond their control; the Plan Administrator advised Mr. Egger that it maintained the requested collective bargaining agreements at the Plan Administrator's office.

102.    By letter dated June 14, 2019, Defendants denied Mr. Egger's appeal.

103.    The June 14, 2019 letter denying Mr. Egger's appeal cited and purported to rely on Plan provisions and Treasury regulations that were not cited in the March 5 2019 letter terminating Mr. Egger's retirement benefits and as to which Mr. Egger had no opportunity to address and explain why such provisions do not authorize the termination of Mr. Egger's benefits.

104.    The June 14, 2019 appeal denial stated that Mr. Egger's pension benefits would be terminated effective July 1, 2019 purportedly because of his "failure to have a bona fide separation from service."

105.    The June 14, 2019 letter also stated that Mr. Egger had been overpaid a total of $71,856 and that he would have to reapply for his pension benefits and establish a new Annuity Starting Date and that once he did so, his monthly benefits would be reduced until the purported overpayment was fully recovered.

106.    Each of the Plaintiffs has fully exhausted their administrative remedies.

107.    Upon information and belief, the Plan applied and continues to apply to Mr. Phillips, Mr. Murphy, Mr. Egger, and all other similarly situated Plan participants an unwritten and undisclosed Plan rule and/or amendment prohibiting return to work following retirement under circumstances not set forth in the provision defining retirement and Disqualifying Employment under the Plan.

108.    Upon information and belief, Defendants appear to apply an unwritten rule that retirees must wait some unspecified period of time not defined in the letters denying Plaintiffs' appeals that in order to work for any employer, no matter where or in what capacity and

regardless of whether the employee ever worked for the employer before and in what capacity to be considered retired under the Plan.

109.    Despite multiple requests for documents prior to bringing this suit, Defendants have failed entirely to produce a single document constituting a Plan amendment amending the Disqualifying Employment or retirement under § 8.08 of the Plan to impose a 90 day requirement or purporting to redefine service under the Plan.

110.    For example, Mr. Phillips last worked as a Boilermaker in April 2017 for Chicago Bridge & Iron. He later accepted a job as an electrician with Day & Zimmerman from June 14, 2017 to December 2017. Day and Zimmerman states on its website that it is an international company with 150 worldwide locations employing 46,000 people. Day & Zimmerman  lists work and jobs in the fields of engineering, construction, maintenance, munitions and government services and includes contacts for dozens of unions at hundreds of locations including unions of boilermakers, millwrights, electricians, carpenters, laborer's, asbestos workers, insulators, operating engineers, pipe fitters, sheet metal workers, iron workers, cement masons, brick masons, sprinkler filers, painters and teamsters. The company states that it regularly hires from these trades and also regularly hires planners/ schedulers and supervisors in numerous skilled crafts.

111.    Mr. Phillips' 6-month job as an electrician with Day and Zimmerman did not constitute service under the Plan. He did not work in any capacity as a Boilermaker or receive credit for his service under the Plan. Mr. Philips' work as an electrician for Day & Zimmerman constituted service in the pension plan of the IBEW for which he received credit. The Plan did not and could not provide Mr. Phillips with service credit for his work at Day and Zimmerman as an electrician.

112.    Likewise, Mr. Murphy's work as a Consulting Safety Coordinator for Day & Zimmerman more than 11 ½ weeks after he permanently ceased work as a boilermaker did not constitute service under the Plan and the Plan did not and could not provide Mr. Murphy with service credit for his work at Day & Zimmerman as a Consulting Safety Coordinator.

113.    Similarly, Mr. Egger's work as a Steamfitter for Cherne Contracting/Kiewit Corporation more than 4 ½ years after he permanently ceased work as a boilermaker did not constitute service under the Plan and the Plan did not and could not provide Mr. Egger with service credit for his work as a Steamfitter.

114.    As the only Plan rule purporting to restrict post-retirement employment did not require Mr. Phillips, Mr. Murphy or Mr. Egger to refrain from post-retirement work for a contributing employer but only prohibited work in classifications covered by the Collective Bargaining Agreements, application of a rule and/or *de facto* amendment requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan to them violated Plaintiffs' rights under the Plan and under ERISA.

115.    The requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan imposes eligibility criteria for benefits that are not contained in the Plan.

116.    The requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification

18

covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan is not provided for anywhere in the Plan and operates as an undisclosed and/or *de facto* amendment of the Plan.

117. The requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan was not a rule or amendment adopted in accordance with the procedures governing amendment and/or administration of the Plan.

118. The requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan was not disclosed to participants in any summary of material modifications or in any other notice.

119. The rule imposing the requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan reduces each of the Plaintiff's accrued benefits under the Plan.

120. The requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan reduces the rate of future benefit accrual under the Plan.

121.    No notice was provided to Plan participants in advance of implementation of the requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan.

122.    The requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan was not disclosed to participants.

## CLASS ALLEGATIONS

123.    In addition to Plaintiffs' individual claim for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following class:

> All Plan participants (and their surviving spouses and eligible beneficiaries) whose retirement benefits were terminated or will, during the pendency of this action be terminated, or whose applications for retirement benefits were or will be denied on the basis that they were working in employment for an employer who contributes to the Plan and who were not working in covered employment or in another job classification of the type included in a Collective Bargaining Agreement as that term is defined in the Plan.

124.    The website of the International Brotherhood of Boilermakers states that it has 235 local lodges across the United States and that it represents workers throughout the United States.

125.    The Form 550 Annual Return Report for the Plan for 2017 states that there are over 90,000 active and retired Participants in the Plan.

126.    The classes are so numerous that joinder is impracticable including because of the

number of Class Members and because the members of the class are geographically dispersed throughout the United States.

127.    There are questions of law and fact common to the members of the class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

        a.  whether Defendants violated the terms of the Plan and ERISA by terminating participants' benefits and seeking repayment of benefits paid on the grounds that that Class Members did not have "an intent to separate from service at the time" of their retirement;

        b.  whether Defendants violated the terms of the Plan and ERISA including by denying retirement benefits to Class Members and refusing to process retirement applications based on assertions that such participants were not entitled to retirement benefits if they were working in any capacity for any employer who had a contract with the Plan notwithstanding the fact that such participants were not working in covered service in a job classification of the type included in a Collective Bargaining Agreement as defined in the Plan;

        c.  whether Defendants violated ERISA's accrual of benefits requirements including ERISA's prohibitions on retroactive amendments that reduce benefits and reductions in future benefit accruals without notice in applying de facto amendments that reduced Class Members' accrued benefits and rate of future benefit accruals on the alleged grounds that  they were working for an employer who had a contract with the Plan notwithstanding the fact that such

21

Class Members were not working in covered employment or in a job classification of the type included in a Collective Bargaining Agreement as defined in the Plan;

d.  whether Defendants breached their fiduciary duties by, *inter alia*:  attempting to circumvent the Plans own rule governing when a participant will be considered retired and attempting to circumvent the Plan's express suspension of benefits provisions which do not permit Defendants to suspend benefits for working after retirement outside of a job classification covered by the Boilermakers Collective Bargaining Agreement;  purporting to reduce participants' rights to benefits under the Plan by applying nonexistent  Plan provisions to reduce benefits;  retroactively reducing accrued benefits;  demanding repayment of benefits based on Defendants own breaches of fiduciary responsibility, lack of disclosure and delay and imposition of the ad hoc unwritten de facto plan amendment, and failing to maintain the Plan in accordance with ERISA's written Plan requirement; failing to comply with ERISA's claims procedure requirements;

e.  whether Defendants failed to maintain a written plan in accordance with the requirements of ERISA;

f.  whether Defendants failed to provide accurate disclosures including notices of material modifications and accurate summary plan descriptions; and

g.  whether Defendants are systematically failing to comply with the Plan and ERISA's claims procedure requirements and regulations thereunder by, *inter alia*, failing to provide participants with reference to the Plan provisions upon

which the Plan's denial of benefits is based in the determination to suspend

benefits, withholding until after the participants appeal the denial of their

benefits has been decided, any citation or reference to any Plan provision

regarding the determination to suspend benefits, citing inapposite and

irrelevant provisions of the Plan and a provision  the internal revenue code

without any explanation, failing to advise Plan participants of the information

needed to perfect their appeals, failing to state the basis or provide any

documentation or explanation for reliance on the Plan provisions cited in

denial of the appeal, failing to produce documents required to be produced

under ERISA in connection with a claim for benefits or an appeal including,

inter alia, all documents generated, referred to, or relied on in connection with

a claim or appeal.

128.    Named Plaintiffs will fairly and adequately represent the interests of the Class

Members. They have diligently pursued their claims and engaged the undersigned experienced

ERISA and class action counsel.

129.    The prosecution of separate proceedings by the individual members of the class

would create a risk of inconsistent or varying adjudications that would be dispositive of the

interests of other members not parties to the litigation or substantially impair or impede their

ability to protect their interests.

130.    Upon information and belief, Defendants have acted or refused to act on grounds

generally applicable to the classes as a whole by engaging in the same violations of ERISA and

the terms of the Plan with respect to the class, thereby making declaratory relief and

corresponding injunctive and equitable relief appropriate with respect to the class as a whole.

131.    A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

    a.  the Class Members have suffered from the same violations of the terms of the Plan and ERISA and the numbers and geographic diversity of Class Members make joinder impractical; and

    b.  the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for  some individual participants likely constitute a significant and recurring obstacle to the ability of individual Class Members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension and ERISA rights unless remedied through injunctive and other appropriate relief.

### COUNT I
### (TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))

132.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

133.    By the acts and omissions set forth above, including, *inter alia*, by denying Plaintiffs and Class Members their retirement benefits even though they were eligible for those benefits under the terms of the Plan, Defendants violated the terms of the Plan.

134.    As a proximate result of Defendants' violations of the terms of the Plan, Plaintiffs and Class Members were harmed and deprived of benefits due under the terms of the Plan.

135.    As a result of Defendants' violations of the terms of the Plan, Plaintiffs and Class Members are entitled to an order declaring that Defendants violated the terms of the Plan, enjoining Defendants from violating the terms of the Plan and directing Defendants to pay Plaintiffs and Class Members all benefits due, together with prejudgment and post-judgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)

136.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

137.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1)    Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
(A)    for the exclusive purpose of:
(i)    providing benefits to participants and their beneficiaries; and
(ii)    defraying reasonable expenses of administering the plan;
(B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

*** 

(D)    in accordance with the documents and instruments governing the        plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

138.    Section 405 of ERISA, 29 U.S.C. § 1105, provides in relevant par for co-fiduciary liability as follows:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

**(1)** if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
**(2)** if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
**(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

139.    Defendants have a fiduciary responsibility to provide Plaintiffs and Class Members with truthful and adequate disclosures of the Plan's retirement eligibility and, suspension of benefits provisions and information relevant to claims and appeals and to administer the Plan in accordance with ERISA and the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA.

140.     By the acts and omissions complained of above, including, *inter alia*, by failing to adequately provide notice of Plan provisions, failing to give advance notice to participants that the Plan was amended to restrict eligibility for retirement benefits, and by applying *de facto* amendments to retroactively decrease accrued benefits, and by failing to provide a full and fair review of the claims denial and withholding material information, Defendants deprived Plaintiffs and Class Members of rights protected by ERISA and the terms of the Plan and breached their fiduciary duties to Plaintiffs and Class Members and are liable to Plaintiffs and Class Members as fiduciaries and as co-fiduciaries for knowingly participating in the acts or omissions set forth herein and failing to make reasonable efforts to remedy the breaches set forth herein.

141.    As a proximate result of Defendants' breaches of fiduciary duty, Plaintiffs and Class Members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA and the Plan has been unjustly enriched.

142.    Plaintiffs and Class Members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants

breached their fiduciary duties and violated ERISA § 404 and applicable regulations; enjoining Defendants from purporting to restrict eligibility for retirement benefits including by applying the 90-Day Rule or any similar rules not contained in the terms of the Plan; surcharging the fiduciaries, requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits and the wrongful denial of retirement benefit applications, reforming the Plan, *inter alia*, to clarify that the 90-Day Rule does not apply to Plan members' entitlement to benefits; and enjoining Defendants to immediately make Plaintiffs and all Class Members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT III
### (TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFITS REQUIREMENTS PURSUANT TO SECTIONS 502(a)(1)(B) AND (a)(3))

143. Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

144. Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

(g) Decrease of accrued benefits through amendment of plan
(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2) For purposes of paragraph (1), a plan amendment which has the effect of–
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant

27

who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. ...

145.   Section 204(h) of ERISA, 29 U.S.C. § 1054(h), provides in relevant part:

(h)  Notice of Significant Reductions in Benefit Accruals

(1)   A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—

(A)  each participant in the plan,

(B)  each beneficiary who is an alternate payee (within the meaning of section 1056(d)(3)(K) of this title) under an applicable qualified domestic relations order (within the meaning of section 1056(d)(3)(B)(i) of this title)…

146.   In accordance with settled law under ERISA, plan amendments adopted in violation of ERISA §§ 204(g) and (h) never become effective.

147.   Because the 90-Day Rule operates as a de facto amendment purporting to restrict benefits and unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 90-Day Rule could never became effective.

148.   By the acts and omissions complained of above, including, *inter alia,* by amending the Plan to reduce accrued benefits, by failing to give notice of a significant reduction in the rate of future benefit accruals, by failing to disclose Plan amendments and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments, Defendants violated ERISA, including, *inter alia* ERISA §§ 204(g) and (h) and applicable regulations.

149.   Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3),  provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

150. Section 502(a)(1)(B) of ERISA, 29 U.S.C. ' 1132(a)(1)(B), provides that:

A civil action may be brought -

(1) by a participant or beneficiary - . . .

***

(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

151. As a proximate result of Defendants' violations of ERISA, Mr. Phillips and Class Members have been harmed and, *inter alia*, have been deprived of rights and accrued benefits due or to become due and the Plan has been unjustly enriched.

152. Plaintiffs and Class Members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA § 204 and applicable regulations; enjoining Defendants from restricting benefits based on the 90-Day Rule and to immediately make Plaintiffs and all Class Members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to restrict eligibility for retirement benefits and declaring that such amendments never became effective; requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits and the wrongful denial of retirement benefit applications; enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

**COUNT IV**
**(TO REDRESS VIOLATIONS OF ERISA'S WRITTEN PLAN AND DISCLOSURE REQUIREMENTS)**

153.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

154.    Section 101 of ERISA, 29 U.S.C. § 1021, Duty of Disclosure and Reporting provides in relevant part:

> (a)    **Summary plan description and information to be furnished to participants  and beneficiaries**
>
> The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan--
>
> (1)  a summary plan description described in section 1022(a)(1) of this title; and
>
> (2)  the information described in subsection (f) and sections 1024(b)(3) and 1025(a) and (c) of this title.

155.    Section 102 of ERISA, 29 U.S.C. § 1022, Summary Plan Description, provides in relevant part:

> (a)    A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 104(b)(1) of this title.

> (b)    The summary plan description shall contain the following information: . . . the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health

30

Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this title).

156.    Section 104(b) of ERISA, 29 U. S. C. § 1024(b), Publication of summary plan description and annual report to participants and beneficiaries of plan, provides in relevant part:

(1)    The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title–

    (A)    within 90 days after he becomes a participant, or (in the case of a (beneficiary) within 90 days after he first receives benefits, or

    (B)    if later, within 120 days after the plan becomes subject to this part. The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan... .

(2)    The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3)    Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which

the requirements of section 1021(f) of this title applies) shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

157.    Section 402 of ERISA, 29 U.S.C. § 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

158.    By the acts and omissions complained of above, Defendants violated ERISA §§ 101, 102, 104 and 402 and regulations thereunder.

159.    As a proximate result of Defendants' violations of ERISA §§ 101,102, 104, and 402, Plaintiffs and Class Members have been harmed and, *inter alia*: have been deprived of material disclosures required to be made by Plan fiduciaries and have been deprived of the ability to make timely, informed decisions regarding their retirement benefits, their employment following retirement, their savings, and their decisions regarding whether and when to retire, and Defendants have been unjustly enriched.

160.    Plaintiffs and Class Members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 101, 102, 104, and 402 and applicable regulations, enjoining Defendants from failing to comply with their disclosure obligations and from applying the 90-Day rule and to recalculate and pay all Class Members' benefits, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

## COUNT V
## (TO REDRESS VIOLATIONS OF ERISA'S CLAIMS PROCEDURE REQUIREMENTS)

161.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

162.    Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

In accordance with regulations of the Secretary, every employee benefit plan shall-
-
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits   has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

163.    ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators, *inter alia*, must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial, must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, must provide claimants with citation to the plan provisions relied upon, and must provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

164.    By the acts and omissions set forth above, including, but not limited to, failing to provide Plaintiffs with citation to Plan provisions upon which the determination was based in the initial termination letters and putting such provisions only in the denial of appeals and not providing Mr. Phillips with a description of the additional material or information necessary to

perfect his claim and why such information is necessary, Defendants violated ERISA's claims procedure requirements.

165.    As a result of Defendants' acts and omissions set forth above, Plaintiffs and Class Members who have been denied benefits have been harmed and their rights to benefits and to pursue his claims were chilled, delayed and thwarted.

166.    Plaintiffs are entitled to appropriate declaratory, injunctive and equitable relief, including an order that Defendants are not entitled to any deference to the extent any deference would otherwise apply to claims and appeals denials, enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure requirements, requiring Defendants to provide appropriate make-whole relief, surcharging the Trustees and ordering Defendants to disgorge and remedy Defendants' unjust enrichment.

## COUNT VI
## (TO REDRESS VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS)

167.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

168.    Section 104(b)(4) of ERISA, 29 U.S.C. ' 1024(b)(4), provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

169.    Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting

> participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

170.    Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in Section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of...ERISA [has been] increased from $100 a day to $110 a day."

171.    As set forth above, despite Plaintiffs' requests and Defendants' legal obligation to furnish documents, Defendants failed to produce and actively discouraged and impeded Plaintiffs Phillips and Egger from seeking and obtaining copies of the collective bargaining agreements to which they were entitled under ERISA § 104, 29 U.S.C. § 1024 and the regulations thereunder.

172.    As a result of Defendants' acts and omissions set forth above Plaintiffs Phillips and Egger have been harmed and their right to benefits and to pursue their claims for benefits were chilled, delayed and thwarted.

173.    Defendants should be enjoined to timely furnish the requested collective bargaining agreements and should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after Plaintiffs' first requests for collective bargaining agreements that Defendants failed to produce through the date the requested documents are furnished to each Plaintiff, together with costs and attorneys' fees

WHEREFORE, Plaintiffs request that Judgment be entered in their favor against Defendants as follows:

A.     Declaring that Defendants violated the terms of the Plan;

B.     Declaring that Defendants violated ERISA §§ 101, 102, 104, 204, 402, 404, 405, 502 and 503, 29 U.S.C. §§ 1021, 1022, 1024, 1054, 1102, 1104, 1105, 1232 and 1133, and regulations thereunder;

C.     Enjoining Defendants from violating the terms of the Plan;

D.     Enjoining Defendants from violating ERISA §§ 101, 102, 104, 204, 402, 404, 405, 502 and 503, 29 U.S.C. §§ 1021, 1022, 1024, 1054, 1102, 1104, 1105, 1232 and 1133, and enjoining implementation of requirements that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan;

E.     Ordering reformation of the Plan, *inter alia*, clarify that the requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan does not exist, declaring that any amendment implementing the requirement that participants refrain from work for a contributing employer following retirement for some unspecified time frame where such work is not in a classification covered by the Collective Bargaining Agreements and where such work would nevertheless constitute "retirement" under the terms of the Plan could never have become ???

36

effective and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

F.    Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiffs and Class Members together with all profits attributable thereto;

G.    Surcharging each and every member of the Board of Trustees for the full amount of Plaintiffs' and Class Members' withheld retirement benefits and such other amounts to make Plaintiffs and Class Members whole;

H.    Enjoining Defendants to recalculate Plaintiffs' and Class Members' retirement benefits and restore the benefits that were reduced and withheld make Plaintiffs and Class Members whole for all losses, including pre-judgment and post-judgment interest;

I.    Awarding Plaintiffs Phillips and Egger $110 a day for each and every day past 30 that the Plan Administrator delayed and refused to provide requested collective bargaining agreements;

J.    An award of attorneys' fees and costs pursuant to ERISA § 502(g) and/or the common fund theory, and

K.    Awarding such other and further relief the Court deems just and proper.


## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the trial site for this case.

**DATED** this 17th day of July 2019

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By: /s/ Rik N. Siro

    Rik N. Siro          (KS FED #77812)
    Eric W. Smith       (KS #16539)
    Athena M. Dickson   (KS #21533)
    Raymond A. Dake   (KS FED #78448)
    Ryan P. McEnaney   (KS FED #78827)
    1621 Baltimore Avenue
    Kansas City, Missouri, 64108
    816.471.4881 (Tel)
    816.471.4883 (Fax)
    rsiro@sirosmithdickson.com (email)
    esmith@sirosmithdickson.com (email)
    adickson@sirosmithdickson.com (email)
    rdake@sirosmithdickson.com (email)
    rmcenaney@sirosmithdickson.com (email)


**MARTIN & BONNETT, P.L.L.C.**

    Susan Martin (*pro hac vice* app. forthcoming)
    Jennifer Kroll (*pro hac vice* app. forthcoming)
    Michael M. Licata (*pro hac vice* app. forthcoming)
    4647 N. 32nd St., Suite 185
    Phoenix, Arizona 85018
    602.240.6900 (Tel)
    602.240.2345 (Fax)
    smartin@martinbonnett.com (email)
    jkroll@martinbonnett.com (email)
    mlicata@martinbonnett.com (email)

**ATTORNEYS FOR PLAINTIFFS**