IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS ALLEN PHILLIPS, *ET AL.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 19-cv-02402-TC-KGG |
| | ) |
| BOILERMAKER-BLACKSMITH NAT'L PENSION TRUST, *ET AL.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER ON MOTION TO COMPEL

Now before the Court is Plaintiffs' Motion to Compel (Doc. 180) seeking documents requested in discovery but withheld by Defendants. Having reviewed the submissions of the parties, Plaintiffs' motion is **DENIED.**

### I. Background

Plaintiffs' claims arise under the Employment Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and allege violations of the terms of the Boilermaker-Blacksmith National Pension Trust ("Plan" or "Trust") and ERISA. (Doc. 57). The Plaintiffs in this case were granted early retirement in accordance with the Plan. However, the Defendants allege that the Plaintiffs were not actually retired because they were still engaged in some type of employment. This is referred to as the "separation from service" rule in which Plan participants must terminate employment from any employers contributing to the Trust and must have the intent to refrain from returning to

1

work. As a result, the Defendants terminated their benefits and sought to recoup overpayments under the Plan.

The Defendants' Pension Plan is administered by a Board of Trustees and governed by a Trust agreement which outlines the Plan benefits and the authority of the Trustees to amend the plan. Much of the dispute is centered around communications sent after the Supreme Court case *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004). In *Heinz*, the Supreme Court held that an employer cannot expand prohibited post-retirement work after a participant has already accrued a benefit. *Id.* at 746–750. In particular, the pension plan amendment in that case violated the anti-cutback rule of ERISA, which contradicted previous IRS guidance on the issue. *See id.*; *see also* ERISA § 204(g), 29 U.S.C. § 1054(g).

After the *Heinz* ruling, the IRS issued Revenue Procedure 2005-23 which required plans to evaluate whether they had amendments that violated the *Heinz* rule, and if they had, they must provide compensation to the affected participants. (Doc. 194, at 3). As a result, Defendants engaged in various communications regarding whether their plan amendments violated the *Heinz* rule and whether any relief should be provided. Defendants eventually amended their Plan and added the "separation from service" rule. Much of these communications are sought by Plaintiffs to which Defendants hold are protected by privilege.

The Defendants produced certain documents they claim are privileged to allow Plaintiffs to determine whether they wish to file a motion to compel. (Doc. 134). Under, the protective order in this case (Doc. 31), the production of the documents did not

constitute a waiver of the privilege (Doc. 153). After review and inspection of the documents by Plaintiffs, they filed a motion to compel 20 of the 63 documents in the Defendants' privilege logs.

The present motion relates to Plaintiffs' Requests for Production 21(a) and 41 (Exhibit D) which provide:

> 21(a): All documents, including, without limitation, seminar materials, legal opinions, advice of counsel, communications with prior plan administrators, communications with service providers, Board of Trustee minutes, claims from Participants etc. pertaining to any of the following: (a) eligibility for retirement and commencement of retirement benefits for participants who work in employment for a contributing employer following commencement of retirement benefits;
>
> 41: All documents submitted to, generated by or considered at meetings of the Heinz/Prohibited Employment Committee.

Specifically, Plaintiffs move to compel 20 of the 63 Documents on Defendants' privilege logs. (Doc. 180). In response to these discovery requests, Defendants maintain that the documents in question are immune to discovery pursuant to the attorney-client privilege. (Doc. 194). Plaintiffs contend, *inter alia*, that the fiduciary exception to the attorney-client privilege prevents the Defendants from invoking the privilege. (Doc. 180). Plaintiffs, without objection, delivered all the challenged documents to the Court's chambers for an *in-camera* review.

## II.   Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure govern the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

As such, for the information to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018). A party may file a motion to compel when the responding party fails to permit discovery. *Sperry v. Corizon Health*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *3 (D. Kan. Sept. 22, 2020). The initial burden rests with the party seeking discovery, but the moving party need not address all proportionality considerations. *Id.* Once the initial burden has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004). "The objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Carter v. Union Pac. R.R.*, No. 20-2093-DDC-KGG, 2021 WL 1250958, at *2 (D. Kan. Apr. 5, 2021) (Gale, J.) (citing *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004)).

**III.   Analysis**

    **a.  Appropriateness of *In-Camera* Review**

The decision to conduct an *in-camera* review of privileged documents rests in the sound discretion of the court. *United States v. Zolin*, 491 U.S. 554, 572 (1989). The *in-camera* review of privileged documents does not destroy the privileged nature of contested communications. *Id.* at 569. Further, *in-camera* inspection of documents covered under the attorney-client privilege "is a smaller intrusion upon the confidentiality

4

of the attorney-client relationship than is public disclosure." *Id.* at 572. Courts in the Tenth Circuit have determined that *in-camera* review of documents is appropriate when determining the applicability of the fiduciary exception. *See, e.g.*, *Violetta v. Steven Brothers Sports Mgmt., LLC*, No. 16-1193-JTM-GEB, 2017 WL 3675090, at *15 (D. Kan. 2017 Aug. 24, 2017); *see also, e.g.*, Stout v. Deseret Mut. Ben. Adm'rs, No. 1:11-cv-00143, 2012 WL 5498018, at *3 (D. Utah Nov. 13, 2012) ("Given that the fiduciary exception analysis examines whether the communications were provided in a fiduciary or non-fiduciary context as well as the content of the actual communications, the court concludes that an in camera review of the documents is appropriate.").

In this case, the parties have jointly agreed to *in-camera* inspection of the privileged documents. (Doc. 194, at 6; Doc. 201, at 1). *In-camera* review can lead to particularly helpful evidence for the Court because there are conflicting descriptions regarding the content of the disputed documents. The documents are not particularly voluminous and will shed insight on the applicability of the attorney-client privilege and/or the fiduciary exception. Accordingly, the Court finds *in-camera* inspection of the documents to be appropriate.

### b. Existence of the Attorney Client Privilege

As a threshold matter, the Court must first determine whether the attorney-client privilege applies to the requested documents. If the documents are covered by the attorney-client privilege, then the Court must determine whether the fiduciary exception applies. If the exception applies, then Defendants must produce the requested documents so long as they are relevant and proportional to the needs of the case.

5

The application of the attorney-client privilege is not novel to this District and was summarized by Magistrate Judge O'Hara in the case of *In re Syngenta Ag Mir 162 Corn Litigation*:

> Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. Although this description suggests that the privilege only operates to protect the client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is 'related to the rendition of legal services and advice.' The party asserting the privilege bears the burden of establishing that the elements are met.

No. 14-2591-JWL, 2017 WL 386835, at *4 (D. Kan. Jan. 27, 2017) (internal citations omitted). The party withholding documents subject to the privilege must submit a privilege log, which is required to include:

> (1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; (2) The date upon which the document was prepared; (3) The date of the document (if different from # 2); (4) The identity of the person(s) who prepared the document; (5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney; (6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;' (7) The number of pages of the document; (8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being

>asserted); and (9) Any other pertinent information necessary to establish the elements of each asserted privilege.

*Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citing *BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWL-GEB, 2017 WL 914809, at *4 (D. Kan. Mar. 8, 2017) (citations omitted)). "The objecting party must provide enough information in the privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine its applicability." *Leftwich*, 2017 WL 1338838, at *2. The Plaintiffs argue that documents 1-3 and documents 19-20 are not covered by the attorney-client privilege. As such, the Court will examine each document to determine its applicability.

>Documents 1 and 2

Documents 1 and 2 are an email exchange between outside attorney Joyce Mader and Executive Administrator Curtis Barnhill. (Doc. 180). The Defendants in their privilege log assert that the email regarded legal opinions on amending the Plan to add a discretionary feature (*i.e.*, settlor function). Plaintiffs argue that documents 1 and 2 are not covered by the attorney client privilege because the purpose of the email exchange was not to obtain legal advice, but "merely requesting the names of attorneys who might provide advice to the Plan." (*Id.*). In the email exchange, Ms. Mader was called upon to provide the names of qualified attorneys to work on the Plan. She responded that she would get him the names of attorneys and gave further advice on how he should approach the matter. The additional information provided was what she found pertinent to

7

obtaining counsel. While the additional information was not expressly requested, it was still related to the Trustees' assignment.

In Plaintiffs' reply, they argue that Ms. Mader's advice was not for the Trustees, and was unsolicited advice, which would take the matter outside the attorney client privilege (Doc. 201). In support, they highlight that Mr. Barnhill was advised to not give certain Trustees the opinions from the sought-after attorneys. First, Ms. Mader did not say the opinions should be withheld from *all* the Trustees but withheld from Trustees who are pushing the matter. Further, it is not her advice she suggested be withheld, but the advice from the requested attorneys. In sum, Mr. Barnhill was acting under the Trustee's direction and received counsel from Ms. Mader regarding how he should approach the matter. Therefore, the Court finds that documents 1 and 2 are potentially covered under the attorney client privilege.

Document 3

Document 3 is an email from, Janae Schaffer—the Fund's compliance attorney, informing staff that the IRS has issued its final regulations regarding retirement benefits, and then asked whether the new regulations should be brought to the Trustee's attention for possible remedial measures and amendment. (Doc. 194). Defendant's privilege log asserts that the email contains legal advice concerning Plan amendments and was given to staff in their settlor function. Plaintiffs contend that document 3 is simply an email to "staff employees in the normal course of the plan administration duties" and does not constitute legal advice. (Doc. 180). Here, the email is informing staff of the change in IRS regulations and asks whether the Trustees want this brought to their attention. The

8

email is coming from outside counsel and constitutes a communication regarding the legal implications of the IRS regulations. Therefore, it is covered by the attorney client privilege.

Documents 19 and 20

Documents 19 and 20 are email correspondence between in-house counsel and the Plan's actuary regarding potential revisions to the Plan. Defendants' privilege log assert that it was communication to legal counsel regarding plan amendments. Plaintiffs claim that the emails are not protected by the attorney-client privilege because it is not a confidential communication with a client for the purpose of providing legal advice. (Doc. 180, at 8–9). The Defendants argue that email communications were legal advice regarding suggested revisions and the fact that the actuary was not a client is irrelevant. (Doc. 194, at 7–8).

Communications from an attorney to a third-party agent can still be within the attorney client privilege. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2122440, at *2 (D. Kan. July 20, 2007) (citing *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961)). However, the legal advice must still relate to the client and have intended to be confidential. *See id.* at *2–3. The Tenth Circuit recognizes the common interest doctrine which "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Violetta v. Steven Brothers Sports Mgmt., LLC*, No. 16-1193-

9

JTM-GEB, 2017 WL 3675090, at *13 (D. Kan. 2017 Aug. 24, 2017). The communication must be made to advance their shared interest. *Id.*

The Court finds that the email communications relate more to legal advice rather than merely questions relating to historical facts and context. The compliance attorney is communicating the suggested revisions and discussing the legal implications of the particular language used. Moreover, the communications are for the aid of the Trustees in order to reduce the chances of potential litigation. Therefore, documents 19 and 20 are potentially covered under the attorney-client privilege.

Plaintiffs are not challenging documents 4-18 as not being covered under the attorney-client privilege; rather, they are arguing the fiduciary exception applies. The Court has examined the Defendants' privilege log and is satisfied that the Defendants have provided enough information to establish its applicability. Accordingly, the Court finds that the attorney-client privilege potentially applies to documents 4-18 absent the application of the fiduciary exception.

### c. Fiduciary Exception to the Attorney-Client Privilege

The "fiduciary exception derives from the principle that when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries." *Violetta*, 2017 WL 3675090, at *14. This becomes especially relevant when a plan administrator invokes the attorney-client privilege against the plan beneficiaries. *Id.* When an ERISA trustee seeks the advice of an attorney on matters of plan administration and it does not implicate the trustee in a personal capacity, the trustee cannot assert the attorney-client privilege

against the plan beneficiaries. *Id.* However, when a trustee retains counsel to defend herself against the beneficiaries, the attorney-client privilege remains intact. *Stroot v. Hartford Life and Accident Ins. Co.*, 363 F. Supp. 3d 1174, 1177 (D. Kan. 2019). "[C]ourts have generally found the fiduciary exception inapplicable to communications made during a time when the parties' interests were not aligned or when the subject of the communications did not involve matters that a fiduciary would owe a duty to disclose to a beneficiary." *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *6 (D. Kan. Apr. 11, 2012). Additionally, when the subject of the advice relates to the actions of a settlor (the creator of the trust), the exception does not apply even if the settlor is also the trustee, as in this case. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 233 (3d Cir. 2007).

The Plaintiffs have the "burden to show the fiduciary exception applies to the privileged or work-product-protected documents." *Luper v. Bd. Of Trs. of Police & Fire Ret. System of Wichita, Kansas*, No. 15-1399-EFM-KGG, 2017 WL 3216662, at *3 (D. Kan. July 28, 2017) (quoting *Hermann v. Rain Link, Inc.*, No. 11-1123-RDR-KGS, 2012 WL 1207232, at *9 (D. Kan. April 11, 2012)). Plaintiffs argue that the Defendants are ERISA fiduciaries and the Trustee's authority to amend the Plan is limited "to actions taken solely in their capacity as Plan fiduciaries." (Doc. 180, at 3). In support of their argument, they cite *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615 (D. Kan. 2001) to show that the fiduciary exception applies to the disputed document because the communications were for the benefit of the participants such as the Plaintiffs. (Doc. 180, at 10). Defendants argue that the fiduciary exception does not apply because the

11

documents relate to amending the Plan, which is inherently a settlor function and not fiduciary in nature. (Doc. 194).

Core to the present dispute is the characterization of the communications. Plaintiffs contend the communications relate to plan administration, which brings them within the fiduciary exception. (Doc. 180, at 9–10). While the Defendants argue that the communications relate to modifying the Plan, which is typically a settlor function and not within the fiduciary exception. (Doc. 194, at 9–10). Amending Plan agreements are typically not fiduciary in nature because the action taken is not in a fiduciary capacity, but as settlors or plan sponsors. *See In re Williams Cos. Erisa Litig.*, No. 02-cv-153-H(M), 02-cv-72-H(M), 2004 WL 5537083, at *2 (N.D. Okla. Aug. 3, 2004). The Court agrees with the Defendants that amending the Plan is a settlor function and is typically not fiduciary in nature.

However, Plaintiffs argue that even if amending the Plan is generally non-fiduciary, it should be considered fiduciary in this case because of the Trust agreement. (Doc. 180, at 10). They allege the Trust agreement requires all amendments to be done for the exclusive benefit of the Employees. In essence, the Plaintiffs' claim is that actions taken to amend the Plan are necessarily taken in a fiduciary capacity because of the governing instrument. Indeed, the Department of Labor has issued guidance which provides that settlor functions can be transformed into fiduciary functions by virtue of the Trust agreement. U.S. Dep't of Labor, Field Assistance Bulletin 2002-2, 2002 WL 32502486, at *3 (Nov. 4, 2002). Defendants, on the other hand, do not interpret the Trust agreement as requiring amendments to be performed in a fiduciary capacity.

As this relates to a conflict in the Trust's interpretation, the Court will examine the plain language of the Trust agreement. Article VII, section 2 of the agreement provides:

> **Section 2. Restrictions on Right to Amend or Terminate.** It shall be and it hereby is made impossible upon the termination of this Trust Agreement or pursuant to any amendment, modification, or alteration of this Trust Agreement, or otherwise, for all or any part of the corpus or income of the Fund to be used for or diverted to any purpose other than pension benefits for the exclusive benefit of Employees and their beneficiaries and for the payment of expenses properly payable under the terms of this Trust Agreement or the Plan. No assets of the Fund shall be returned under any circumstances to any Employer or to the Union, (but this provision shall not prevent the return to an Employer pursuant to Section 2 of Article IV of contributions made in error and not a part of the assets of the Trust).

The relevant portion provides: "It shall be and it hereby is made impossible . . . pursuant to any amendment . . . for all or any part of the corpus or income of the Fund to be *used for or diverted to any purpose other than pension benefits* for the exclusive benefit of Employees and their beneficiaries . . . ." (emphasis added). Reading into the plain language, it makes clear that amendments under the Trust agreement are not taken in a fiduciary capacity. The section is rather restricting the Trustee's ability to divert or use Trust funds for any purpose other than the beneficiaries' exclusive benefit. The Court does not need to examine extrinsic evidence when the plain language of the agreement is unambiguous. *See Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1166 (10th Cir. 2014). Accordingly, the governing Trust agreement does not transform the settlor function of amending the Plan into one that is fiduciary in nature.

The remaining arguments from Plaintiffs pertain to whether the disputed documents actually relate to amending the Plan, and to whether they implicate fiduciary

13

activities. Plaintiffs argue that when determining whether a document truly pertains to "plan sponsor" activities, the document must be "wholly unrelated" to plan administration. (Doc. 180, at 16). In other words, if the documents involve any questions pertaining to plan administration, then the documents are fiduciary in nature and the fiduciary exception applies. (*Id.*). Defendants, naturally, take the opposite position. Defendants argue that the documents do not need to relate solely to settlor functions, but it must be the core purpose. (Doc. 180, at 17–19). Put another way, the fact that documents tangentially pertain to plan administration does not automatically render it fiduciary.

Plaintiffs cite a District of Columbia case which held that the party objecting to discovery must show that the document relate to non-fiduciary activities. *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 4 (D.D.C. 1995). This case appears to be in tension with the law in this District. As discussed, the moving party has the burden of showing the fiduciary exception applies; however, the District of Columbia appears to put that burden on the objecting party. *Compare Luper*, 2017 WL 3216662, at *3 (stating the burden on the plaintiff/beneficiary), *with Everett*, 165 F.R.D. at 4 (suggesting the burden is on the defendant/fiduciary) ("The burden is on [defendants], however, to demonstrate that the information and documents were . . . not for the benefit of the plan beneficiaries.").

Defendants cite the Ninth Circuit in its support, which held that it was too expansive of a view to apply the fiduciary exception to all communications unless it was solely related to personal, non-fiduciary matters. *United States v. Mett*, 178 F.3d 1058, 1066 (9th Cir. 1999). The court further held that the attorney-client privilege will exist if

14

a fiduciary obtains advice "to protect herself from civil or criminal liability." *Id.* They also cite a case from the District of South Carolina which followed the *Mett* line of reasoning. *Wellin v. Wellin*, No. 2:13-cv-1831-DCN, 2015 WL 12910633, at *7 (D. S.C. Aug. 28, 2015) (citing *Mett*).

The sentiment expressed in *Mett* and *Wellin* is well-taken. Almost any advice for "handling a trust would on some level be construed as at least indirectly pertaining to trust administration." *Id.* The Court does not find it appropriate to place the burden on the Defendant to show that the challenged documents are wholly unrelated to plan administration. Rather, the Plaintiffs must show that the challenged documents' principal purpose was for plan administration. If the central purpose of the communications were to protect themselves from liability or some other non-fiduciary function, then the attorney-client privilege will shield the documents from discovery. If, however, the Plaintiffs can show the purpose of the communications were for plan administration, then the fiduciary exception applies and the communications are subject to discovery. As such, the Court will examine the documents in dispute.

Documents 1-2: As discussed, documents 1-2 is an email exchange between an outside attorney and the Executive Administrator of the Plan. Documents 1-2 relate to amending the Plan. Granted, the email pertains to obtaining names of attorneys to provide an opinion, but it must be asked why the opinion is being sought. The Trustees are considering amending the Plan regarding the separation from service requirement. So, these communications center around amending the Plan, which is a settlor function, and not fiduciary in nature.

Document 3: Document 3 is an email notifying staff of a change in IRS regulations and asks whether the Trustees want this brough to their attention for potential amendment. The email communication discusses whether amending the Plan is something the Trustee's want to do in light of the change of IRS regulations. Therefore, the communication is not fiduciary and not subject to the exception.

Document 4: Document 4 pertains to the "separation from service" provision and the appropriate language to use. Plaintiffs contend that the communications center around compliance with IRS requirements which is a fiduciary function. (Doc. 180, at 12). Defendants concede that some discussion of IRS compliance takes place, but that is discussed in the broader context of amending the Plan. (Doc. 194, at 14). Document 4 is about revising and amending the Plan to include certain language in the wake of *Heinz*. The communications centers around potential amendments to the Plan and not language currently in place. Therefore, document 4 is not subject to the fiduciary exception.

Documents 5: The document is a draft amendment to the Plan. Accordingly, not subject to the fiduciary exception.

Document 6-7: The documents are email communications regarding an amendment to the Plan and points to be brought before the Committee members. The communication discusses the proposed amendment and its potential legal effects. Since it is discussing language pertaining to Plan amendment, the fiduciary exception does not apply.

Document 8: Document 8 is email correspondence that relates to what language would be best used in the amendment. The fiduciary exception is inapplicable.

16

<u>Document 9</u>: Document 9 is further email communications regarding the "separation from service" definition, and thus, relates to amending the Plan. The fiduciary exception does not apply.

<u>Document 10-11</u>: Documents 10 and 11 contain a draft of the discretionary amendment and its accompanying email correspondence. As such, it is not within the fiduciary exception.

<u>Document 12-13</u>:  Documents 12 and 13 contain another draft of the discretionary amendment and its accompanying email correspondence. As such, it is not within the fiduciary exception

<u>Document 14</u>: Document 14 contains a legal opinion on how to make the proposed amendments compliant with IRS requirements. While there is an element of IRS compliance, the substance of the communication is ensuring the amendment process survives scrutiny. Therefore, the email communication pertains to a settlor function and not within the fiduciary exception.

<u>Document 15-17</u>: Documents 15, 16 and 17 relate to the proposed amendment and legal opinions on the separation from service requirements being added to the Trust agreement. Therefore, documents 15 and 16 are not subject to the fiduciary exception.

<u>Document 18</u>: Document 18 is an email communication regarding a legal opinion of the Plan amendment. As such, it is not subject to the fiduciary exception.

<u>Document 19-20</u>: Documents 19 and 20 are email communications to legal counsel about amending the plan. Plaintiffs contend that this relates to "plan administration" and is therefore a fiduciary function. However, the emails concern the

legal implications of the proposed amendments to the plan and not applying the current Plan language. Therefore, the fiduciary exception does not apply to documents 19 or 20.

## IV. Conclusion

The Court finds that Defendants have met their burden to show that the documents in dispute are covered by the attorney-client privilege. The Court further finds that Plaintiffs have not established their burden of demonstrating the fiduciary exception to the attorney client privilege applies. Accordingly, the documents are covered under the attorney-client privilege and not subject to discovery.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to compel, (Doc. 115), is **DENIED.**

**IT IS SO ORDERED.**

Dated September 29, 2021, at Wichita, Kansas

                                                  /S KENNETH G. GALE
                                                      Kenneth G. Gale
                                                   U.S. Magistrate Judge