In the United States District Court
for the District of Kansas

——————————

Case No. 19-cv-02402-TC-KGG

——————————

Thomas Allen Phillips, et al.,

*Plaintiffs*

v.

Boilermaker-Blacksmith National
Pension Trust, et al.,

*Defendants*

——————————

## ORDER

This lawsuit involves the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* Plaintiffs filed this suit against various individuals and entities concerning the administration of their pension plans and retirement health plan. They allege that Defendants violated various requirements of ERISA and improperly denied Plaintiffs their early retirement benefits. *See* Doc. 57. All Defendants, having jointly filed an answer to Plaintiffs' First Amended Complaint, move for judgment on the pleadings under Fed. R. Civ. P. 12(c). Doc. 111 at 1. For the following reasons, Defendants' motion for judgment on the pleadings is granted in part and denied in part, and Plaintiffs' requests for oral argument, Doc. 123, and supplemental briefing, Doc. 138, are denied.

### I

### A

The standard applicable to Rule 12(c) is identical to that for a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). Evaluating a motion to dismiss is a two-step process. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Iqbal*, 556 U.S. at 678–80. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim need not be probable to be considered plausible. *Id.* But the facts, viewed in the light most favorable to the claimant, must adduce "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claims influence what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

### B

This dispute concerns the administration of employee benefits in defined pension and retirement health plans. To understand the dispute requires context about its participants, the benefit plans at issue, and the obligations and expectations created by the plans.

**1.** There are four named Plaintiffs: Thomas Phillips, Kevin Murphy, Michael Egger, and William Lofthouse. Each participates in a multi-employer defined benefit pension plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*[1] Doc. 57 at ¶¶ 4–10.[2] And each worked as a boilermaker for at

---

[1] Plaintiffs are proceeding individually. Doc. 57. But they are also seeking certification of a class that would permit them to represent all persons similarly situated. Doc. 100. The merits of that request are not considered in this Order.

least one employer that was party to an International Brotherhood of Boilermakers collective bargaining agreement, which required pension contributions. *Id.* at ¶¶ 23–38. As relevant to this suit, Lofthouse also participates in a Boilermakers ERISA health fund. *Id.* at ¶ 175.

There are a multitude of defendants. They fall broadly into two categories, the Pension Defendants and the Health Fund Defendants. The first category of defendants, referred to as the Pension Defendants, includes two sub-categories, referred to as the Pension Entities and the Pension Trustees. The Pension Entities are the Boilermaker-Blacksmith National Pension Trust (Pension Trust) and the Board of Trustees of the Boilermaker-Blacksmith National Pension Trust (Pension Board). The Pension Trustees are six individual trustees of the Pension Trust: Scott Anderson, John Fultz, Lawrence McManamon, Lyndal Turner, Mike Hidas, and Mark Vandiver.

The second category of defendants are referred to as the Health Fund Defendants. Two sub-categories fall within this second category: the Boilermaker National Health & Welfare Fund (Health Fund) and its Board of Trustees (Health Fund Board).

**2.** Ultimately, this is a dispute about the availability of early retirement benefits to participants that retired before normal retirement age. Those benefits, and all aspects of the Pension Trust, are governed by a written plan document. *See* Doc. 71-1; Doc. 71-3.

Three provisions of the Plan are critical to this dispute. The first is Section 4.07 titled "Eligibility for Early Retirement Pension." It provides that "[a] Participant who is retired shall be entitled to an Early Retirement Pension" if he has attained a combination of age and years of service requirements and filed a written application for benefits. Doc. 71-1 at § 4.07; Doc 71-3 at § 4.07; Doc. 57 at ¶ 53.

The second provision is Section 8.04(a). Entitled "Benefits Payments Generally," it governs benefits payment start dates and dictates that payment of early retirement benefits should begin after "[t]he Participant terminates his Covered Employment and retires, as that term is defined in Section 8.08." Doc. 71-1 at § 8.04; Doc. 71-3 at § 8.04.

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

The third section of the Plan, Section 8.08, provides for early retirement benefits. It states, in material part, the following:

> **Before Normal Retirement Age. . . .** [T]o be considered retired and entitled to a pension under this Plan, a person must withdraw completely and refrain from (1) any employment or self-employment in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States, or (2) any direct supervision of such a job classification in the construction industry.

Doc. 71-1 at § 8.08, "Disqualifying Employment" (previously titled "Retirement," *see* Doc. 71-1 at § 8.08). As used in that definition, "a Collective Bargaining Agreement" is an International Brotherhood of Boilermakers Collective Bargaining Agreement. Doc. 71-1 at §§ 1.06, 1.22; Doc. 71-3 at §§ 1.06, 1.22.

**3.** The events leading up to the dispute are not complicated. Each Plaintiff retired from his boilermaker job before normal retirement age, as defined by the Plan. Each applied for—and received—early retirement pension benefits under the Plan. Doc. 57 at ¶ 44. The First Amended Complaint specifically alleges that each Plaintiff intended to retire when he left his boilermaker job and sought early retirement benefits. *Id.* at ¶ 59. Despite that intention, each Plaintiff later resumed work in another type of job (*i.e.*, electrician, safety coordinator, steam fitter, scheduler/planner), but did not engage in any post-retirement boilermaker work. None of Plaintiffs' subsequent jobs was "of the type included in a[n International Brotherhood of Boilermakers] Collective Bargaining Agreement." *Id.* at ¶ 50.

The Pension Trust initially approved the applications and began paying Plaintiffs their early retirement benefits. For three of the Plaintiffs, Phillips, Murphy, and Egger, payment of those benefits did not last long. Approximately one year after each had retired, each received a letter from the Pension Trust notifying him that because he had begun to work for an employer who contributed to the Plan, he was not entitled to early retirement benefits. Doc. 57 at ¶¶ 90, 92, 94. Lofthouse, on the other hand, was paid benefits for seven years before the Pension Defendants notified him that he had not retired and was therefore not eligible for benefits. *Id.* at ¶¶ 99–100. The delay in notification was significant in terms of timing and purported impact. Phillips, Murphy, and Egger learned that they had been overpaid from the day that they retired through the dates of the letters, a year or more later. *Id.* at ¶¶ 91, 93, 95. But it was nearly seven years—and

4

some $640,000—later before Lofthouse received his letter. *Id.* at ¶¶ 99–100, 136.

Despite their demand to refund the benefits that had already been paid, the letters were short on authority. They did not refer to specific Plan or statutory provisions to justify either the termination of benefits or recoupment, nor did they provide any information as to what additional material or information might be necessary to perfect or preserve Plaintiffs' claims. Doc. 57 at ¶ 96. Further, Phillips's and Egger's requests for documents, such as relevant collective bargaining agreements, were denied. *See id.* at ¶¶ 106–09, 119–26.

Each Plaintiff alleges he filed an administrative appeal and contends that Defendants, specifically the Pension Trust, denied them all. Doc. 57 at ¶¶ 101–02, 111–12, 118, 127, 131–32. Each received an appeal denial letter notifying him that his "appeal regarding the termination of [his] Early Retirement Pension and the recoupment of overpaid pension benefits due to the determination that [he] did not separate from service at the time of [his] retirement, was presented to the Boilermaker-Blacksmith National Pension Trust Appeal Committee" on a specified meeting date. Docs. 80-5 at 1; 80-7 at 1; 80-9 at 1; 80-12 at 1. The denial-of-appeal letters cited Plan provisions and Treasury regulations that the termination-of-benefits letters did not cite, which Plaintiffs allege deprived them of an adequate opportunity to respond in the course of their appeals. Doc. 57 at ¶¶ 103–04, 113–15, 128–29, 133–35. These appeal denial letters focused on the Pension Trust's determination that each Plaintiff lacked a bona fide, subjective intent to separate from service at the time that he retired and applied for benefits. *Id.*

The impact of these decisions was stark. Plaintiffs' benefits were not just suspended, they were terminated. Doc. 57 at ¶¶ 104, 115, 129, 135. The appeal denial letters notified Plaintiffs that they would need to reapply for pension benefits and obtain new annuity starting dates. *Id.* at ¶¶ 105, 116, 130, 136. Once new annuity start dates and benefits were established, the appeal denial letters stated, the Pension Trust would withhold monthly pension benefits until the overpayment (*i.e.*, the amount the pension had already paid Plaintiffs) was returned. Doc. 80-5 at 2; Doc. 80-7 at 2; Doc. 80-9 at 2; Doc. 80-12 at 2; Doc. 57 at ¶ 136. Any remainder could also be withheld from Plaintiffs' death benefits. *Id.* Plaintiffs allege these new annuity start date requirements put them into a new category that reduced their benefits. Doc. 57 at ¶¶ 158–59.

**4.** Plaintiffs filed this lawsuit, challenging several facets of the denial and recoupment decisions. First, Plaintiffs allege that the Pension Trust is imposing an unwritten "90-Day Rule," which Plaintiffs call a Plan amendment, in its eligibility determinations. Doc. 57 at ¶¶ 140, 216. Under this rule, if a participant engages in *any* work for an alleged contributing employer within 90 days of retiring from his or her boilermaker job—even if completely unrelated to boilermaker work— the Pension Trust will automatically conclude that participant lacked a true intent to retire and will deny benefits. *Id.* at ¶¶ 140–41.

Second, Plaintiffs allege that two other amendments to the Plan were not properly disclosed to participants, Doc. 57 ¶¶ 49, 173, improperly constrained Plaintiffs' post-early retirement employment, *see id.* at ¶ 139, and reduced their benefits, *id.* at ¶ 174. The first amendment, issued in 2002 and changed again in 2015, concerned the Plan's provisions regarding overpayment of benefits. *Id.* at ¶¶ 170–72. These changes allowed the Plan to seek overpayments from participants regardless of whether their benefits were suspended or terminated. *Id.* They also allowed the Plan to recoup overpayments, even after a participant's death. *Id.* at ¶ 171. They further allowed the Plan to recoup overpayments in any amount, whereas the Plan previously could deduct only 25 percent of monthly benefits. *Id.* at ¶¶ 170–72.

The second amendment, issued in October 2009,[3] did not change any substantive Plan language but changed the name of Plan Section 8.08 (quoted above) from "Retirement" to "Disqualifying Employment." Doc. 57 at ¶ 48. Plaintiffs allege that Section 8.08 provides the Plan's only definition of retirement and the only restrictions on what type of work Plan participants can engage in post-retirement. *Id.* at ¶ 51. According to Plaintiffs, the Plan's definition of retirement is "explicit and unambiguous" and so requires no interpretation. Doc. 123 at 10. Plaintiffs argue that the Pension Defendants "manufacture[d] a contrary definition [of retire] under the guise of an interpretation" to terminate and recoup overpayments of Plaintiffs' retirement benefits. *Id.*

Finally, as pertains to Plaintiff Lofthouse only, Plaintiffs allege that the Health Fund Defendants improperly transferred to the Pension Trust money that belonged to Lofthouse. Doc. 57 ¶ 179. The Health Fund terminated Lofthouse's retiree insurance coverage the

---

[3] The parties sometimes refer to this as "Amendment No. 6," the "June 2009 amendment," or the "2010 change," referencing its effective date.

month after his appeal for pension benefits was denied. *Id.* at ¶¶ 175–77. Since his retirement, Lofthouse had been paying his premiums for health insurance to the Health Fund. *See id.* at ¶¶ 175, 178. Instead of paying those premiums out of pocket, Lofthouse paid them by automatic deduction from his monthly pension benefits, which were held by the Pension Trust. *Id.* at ¶ 178. When it was determined that Lofthouse was not entitled to early retirement benefits, he was no longer eligible for the Health Fund's retiree health insurance. *See id.* at ¶¶ 176, 177. So after the Health Fund terminated Lofthouse's coverage, it told Lofthouse that it would reimburse him his unused premium payments, which totaled more than $50,000. *Id.* at ¶ 178. But the Health Fund did not hand over the money to Lofthouse. Instead, it transferred the money to the Pension Trust to reduce or offset the amount the Pension Trust claimed Lofthouse owed it due to his failure to retire. *Id.* at ¶ 179.

## C

"On behalf of themselves and all others similarly situated, Plaintiffs allege that Defendants" have violated ERISA and assert nine ERISA claims against "Defendants." Doc. 57; *see also* Doc. 100 (seeking certification of a class). The claims fall into three general categories.

The first category is comprised of only Count I. In that count, Plaintiffs seek a review of the administrative appeals decisions under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). Doc. 57 at ¶¶ 193–97. Specifically, they request an order requiring payment of the early retirement benefits that the Pension Defendants have improperly denied them and enjoining further violations. *Id.* at ¶ 197.

The second category—Counts II through VIII—assert ERISA violations. And there is significant overlap among these counts. In Count II, Plaintiffs identify five ways that the Pension Board, Pension Trustees, and Health Fund Board breached their fiduciary duties. Doc. 57 at ¶¶ 207–09. Plaintiffs assert that these Defendants failed to adequately provide notice of Plan provisions, failed to give advance notice to participants that the Plan was amended to restrict eligibility for retirement benefits, applied amendments that retroactively decreased accrued benefits, failed to provide a full and fair review of the claims denials, withheld material information from those denials, and improperly transferred Lofthouse's unused healthcare premiums. *Id.* at ¶ 207.

Count III is derivative of the claims in Count II. In that count, Plaintiffs allege that, by imposing the aforementioned amendments, the Pension Defendants improperly denied or reduced Plaintiffs' benefits in violation of ERISA Section 204(g)'s anti-cutback provisions, 29 U.S.C. § 1054(g), and failed to provide adequate notice of pension plan amendments in violation of Section 204(h), 29 U.S.C. § 1054(h). Doc. 57 at ¶¶ 210–219.

Three counts in the second category focus on administrative failures that are also contained in Count II. In Count IV, Plaintiffs assert that that the Pension Defendants failed to maintain a written plan and provide accurate summary plan descriptions. Doc. 57 at ¶¶ 220–27. In Count V, Plaintiffs argue that the Pension Defendants violated ERISA Section 503's claims procedure requirements, 29 U.S.C. § 1133. *Id.* at ¶¶ 228–33. And in Count VI, Plaintiffs assert that the Pension Defendants failed to furnish plan documents upon request. *Id.* at ¶¶ 234–40.

Count VII has two parts that focus on the impact of the early retirement provision. Plaintiffs claim that the Pension Defendants violated ERISA Section 203(a)'s nonforfeitability provision, 29 U.S.C. § 1053(a), by recouping early retirement overpayments through a total offset of Lofthouse's normal retirement age benefits, Doc. 57 at ¶¶ 136–37, 243; Doc. 123 at 42. They also claim a violation because the Pension Defendants imposed new conditions—through the Plan amendments—on Plaintiffs' right to receive benefits that they earned. *See* Doc. 57 at ¶ 243; Doc. 123 at 42.

In Count VIII, Plaintiffs allege that the Health Fund's refusal to refund to Lofthouse Pension Plan payments was unlawful. Specifically, they contend it was an improper assignment or alienation of pension benefits in violation of ERISA Section 206(d), 29 U.S.C. § 1056(d). Doc. 57 at ¶¶ 246–50.

The third and final category of claims is one sounding in equity. Count IX asserts that Defendants should be equitably estopped from denying that Plaintiffs are entitled to their pension benefits. Doc. 57 at ¶¶ 251–54.

## II

All Defendants (or, as set forth below in greater detail, it appears all Defendants) seek judgment as a matter of law pursuant to Rule 12(c). Doc. 111. This dispute is ripe for resolution and has been for

some time. But two preliminary matters need to be addressed before moving to the substantive legal dispute between the parties. One concerns the universe of information pertinent to resolution of the pending motion. And the other concerns the nature of the claims, *i.e.*, identifying what claims are being made by whom and against whom and which parties seek judgment as a matter of law and on which basis.

**A**

The parties' pleadings are voluminous. Plaintiffs filed a fifty-three page, 254-paragraph Amended Complaint. Doc. 57. Defendants' Answer was 81 pages and had more than 260 pages of exhibits attached to it. Doc. 80. Then the parties' Rule 12 briefing was over 140 pages, *see* Docs. 111, 112, 123, and 125, plus additional attachments, exhibits, and additional authorities that added hundreds of additional pages, *see* Docs. 138, 140, 141, 148, 236, 238, 253, 254, 255, 259, & 260.

Many of Defendants' Rule 12 arguments rely on one or more pages of the several exhibits they attached to their pleadings, Doc. 112 at 11–12, 14, 15, 16, 26, something Plaintiffs strongly oppose, Doc. 123 at 8. The general rule for a Rule 12(c) motion is that matters outside the pleadings may not be considered when evaluating whether a claim has been stated unless that material is incorporated by reference or attached to the complaint and is indisputably authentic. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). Otherwise, the motion should be converted to one for summary judgment with appropriate notice to the parties. *See* Fed. R. Civ. P. 12(d).

Not all of this information Defendants offered may be considered at this stage of the proceedings. Only the documents that were provided in full and referenced in Plaintiffs' First Amended Complaint, Doc. 57, will be considered. This includes the written Plans themselves, Docs. 71-1 & 71-3, the original letters denying Plaintiffs their benefits status, Doc. 80-5 at 16–22, Doc. 80-7 at 28–34, Doc. 80-9 at 20–26, Doc. 80-12 at 18–24, and the appeals letters upholding these denials, Doc. 80-5 at 1–3, Doc. 80-7 at 1–3, Doc. 80-9 at 1–3, Doc. 80-12 at 1–3. All other materials will be ignored for purposes of resolving Defendants' Rule 12(c) motion. And that determination significantly undermines many of Defendants' arguments.

## B

The other problem is that, despite the volume of pleadings offered, it is not clear who did what to whom and which of the defendants does (and does not) seek judgment as a matter of law on which of the many claims. Following *Twombly* and *Iqbal*, the Tenth Circuit observed that it was "particularly important" that a "complaint make clear exactly who is alleged to have done what to whom" in complex Section 1983 cases containing multiple claims against several defendants with varying claims to immunity. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008). Such specificity is at least as important in a complex ERISA case that is pursued on behalf of multiple plaintiffs against a multitude of defendants and involves a variety of equitable and statutory theories with differing underlying conduct.

Plaintiffs' Amended Complaint is not entirely clear or consistent as to who is alleged to have done what to whom. The Amended Complaint largely fails to clarify on whose behalf the claims are being made. Sometimes relief is sought by "Plaintiffs," Doc. 57 at ¶ 233, other times the (putative) "Class Members," *id.* at ¶ 207, many times both Plaintiffs and Class Members, *id.* at ¶¶ 244, 245, and at least one time only on behalf of one or two of the named individual plaintiffs, *id.* at ¶¶ 238, 239, 248, 250. And Plaintiffs often do not identify with precision which defendant is allegedly responsible for which violation(s)—the Amended Complaint simply alleges that all "Defendants," among other things, violated their fiduciary duty and/or duties under ERISA or principles of equity. Ordinarily, that will not do. *Cf. Shrum v. Cooke*, 60 F.4th 1304, 1312-13 (10th Cir. 2023) (affirming dismissal of claim that failed to identify who did what to whom).

And Defendants' dispositive pleadings do not request that clarity, such as may be available under Fed. R. Civ. P. 12(e), or clear up that confusion. To the contrary, all defendants appear to seek dismissal of Plaintiffs' claims. Divining Defendants' intent is difficult because the arguments in Defendants' brief are sometimes broken down by defendant and sometimes by plaintiff(s), have overlapping arguments, and incorporate various arguments among both the claims and defendants. *See, e.g.*, Doc. 112 at 28 & nn.9 & 10 (noting the overlapping claims and making an argument among the various Counts for individual defendants and reserving arguments for some defendants against certain plaintiffs); *see also id.* at n.11 (reserving an argument on one of the claims).

None of this is intended to convey any criticism. Rather it is to explain that the combination of generalized allegations in the Amended Complaint and the content of the dispositive briefing has made rendering a decision both difficult and time-consumingly slow. The following rulings are based on the best understanding of the parties' pleadings.

### III

The Pension Defendants move for judgment on eight of Plaintiffs' nine counts—all but Count VI—while the Health Fund Defendants move for judgment on all counts. Doc. 111. For the following reasons, the Health Fund Defendants' motion is granted in all respects. As for the Pension Defendants, they are granted judgment on Count VIII and portions of Counts II and III. But their motion is denied in all other respects.

### A

In Count I, Plaintiffs assert a claim for review of the decision(s) denying certain benefits. Doc. 57 at 35–36. ERISA Section 502(a)(1) permits a plan participant or beneficiary to bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When evaluating a Section 502 claim based on the denial of ERISA benefits, a district court's review may either be de novo or under a more deferential arbitrary and capricious standard. *Hodges v. Life Ins. Co. N. Am.*, 920 F.3d 669, 675 (10th Cir. 2019) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). All Defendants move for Rule 12(c) relief.

**1.** The Health Fund Defendants argue that they should be dismissed because they did not make and are not alleged to have made any retirement benefits determinations. Doc. 112 at 42. Plaintiffs do not refute that contention. Doc. 123. As a result, the Health Fund Defendants are entitled to judgment as a matter of law as to Count I.

**2.** The Pension Defendants assert that they are entitled to judgment as a matter of law on Count I because their benefits denial decisions were not arbitrary and capricious. *See* Doc. 112 at 19–20. Under the arbitrary and capricious standard of review, a court must uphold an administrative decision if it was made on a reasoned basis and supported by substantial evidence. *Van Steen v. Life Ins. Co. of N. Am.*,

878 F.3d 994, 997 (10th Cir. 2018). "The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). This means that the entire record must be considered. *See Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992).

It is impossible to conduct the substantial evidence review at this stage of the proceedings because the record is incomplete. The parties submitted the Plan and the relevant denial letters, but they failed to provide the complete administrative record. Doc. 123 at 19, 21; Doc. 112 at 8–9; Doc. 135 at 11–12. Defendants attached to their answer, among other things, "excerpts of the Appeal Files of each of the Plaintiffs, including the Plaintiffs' pension applications." Doc. 112 at 11. But even that appears to contain only part of the administrative record. *See* Doc. 135 at 8–9 (claiming that the exhibits submitted thus far are "*part* of the appeal files submitted to the Appeals Committee" (emphasis added)). Thus, it is not possible, or proper at this Rule 12(c) stage, to review the bases or evidence on which these administrative decisions rest. *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) ("federal courts are limited to the 'administrative record'—the materials compiled by the administrator in the course of making [its] decision"); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002) ("Substantiality of the evidence is based upon the record as a whole."); *see also Hirschkron v. Principal Life Ins. Co.*, 141 F. Supp. 3d 1028, 1030 (N.D. Cal. 2015) (converting the parties' cross-motions under Rule 12(c) to motions for summary judgment and considering the merits of the plaintiffs' Section 502(a)(1) arguments where the parties agreed upon the documents the court should have considered); *Salute v. Aetna Life Ins. Co.*, No. 04CV2035, 2005 WL 1962254, at *4 (E.D.N.Y. Aug. 9, 2005) (converting to summary judgment because "it would seem impossible" for the court to review the administrator's decision, based on the administrative record, on the pleadings alone).

The Pension Defendants also argue that they are entitled to judgment because their decision was based on a reasonable interpretation of IRS rules and regulations. Doc. 112 at 10, 21–25; Doc. 135 at 18–19. But the reasonableness of these Defendants' interpretation of IRS rules and protection of their tax-exempt status likely requires the complete administrative record. *Contra* Doc. 112 at 10, 21–25; Doc. 135 at 18–19; *see also* Doc. 138 (requesting permission to submit additional evidence and argument to address Defendant's arguments).

But even if that were not the case, there is a more important reason to deny the motion at this stage of the proceedings: Defendants' argument depends on a factual predicate—that Plaintiffs applied for retirement benefits but subjectively intended to continue their work—that is contrary to what Plaintiffs alleged in their Amended Complaint. *See* Doc. 57 at ¶¶ 50, 59. For purposes of this motion, Plaintiffs are entitled to have their facts viewed as true and all reasonable inferences drawn in their favor. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214–15 (10th Cir. 2011). As a result, the Pension Defendants' motion must be denied.

**B**

Counts II through VIII all relate to ERISA violations that are based in whole or in part on statutory or fiduciary duties. To varying degrees, one or more of the Defendants seek dismissal of these claims.

**1**

Count II broadly claims a breach of fiduciary duties. Doc. 57 at ¶¶ 199–209 (invoking 29 U.S.C. §§ 1104(a)(1), 1106(a)(1)(B), 1106(b)(2), 1109, and 1105). As already noted, Plaintiffs have identified five acts that allegedly breached Defendants' fiduciary duties: failing to adequately provide notice of Plan provisions, failing to give advance notice that the Plan was amended to restrict eligibility for retirement benefits, applying Plan amendments retroactively to eliminate or decrease accrued benefits, failing to provide a full and fair review of the claims denial and withholding material information, and the Health Fund's extension of credit to the Pension Plan. *Id.* at ¶ 207; *accord* Doc. 112 at 43 (largely agreeing with this statement). Plaintiffs assert that the first four of these acts violated the Pension Defendants' fiduciary duties, and that the fifth act (the extension of credit) violated the Health Fund Defendants' fiduciary duties. *See* Doc. 57 at 36–39.

All Defendants move for Rule 12(c) relief. Their arguments against this broad claim are varied. Each is addressed below.

**a.** The Pension Trust and Health Fund argue that they are not proper defendants for fiduciary claims. Doc. 112 at 29 n.11. They claim that because the Pension Trust is an ERISA trust and the Health Fund is an ERISA plan, the assets in question belong to them, and they cannot be fiduciaries with respect to their own assets. *Id.*; *see*

*also Schuman v. Microchip Tech, Inc.*, 302 F. Supp. 3d 1101, 1112 (N.D. Cal. 2018) (collecting cases) (recognizing that a Plan may not be sued for breaching a fiduciary duty but may be named as a defendant for other ERISA claims that seek to recover benefits from the Plan); 29 U.S.C. § 1002(21)(A). Plaintiffs appear to agree or at least do not explain why that is wrong. *See* Doc. 123 at 44–45. As a result, the motion is granted with respect to the Pension Trust and Health Fund for Count II.

**b.** The Pension Board and Pension Trustees argue that Plaintiffs' claim does not apply to them because they did not act as fiduciaries during the Plan amendment process. *See* Doc. 135 at 27. To state a claim under Section 404(a)(1), Plaintiffs must prove both that Defendants were fiduciaries and that they failed to "discharge [their] duties with respect to [the] plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Plaintiffs have satisfied that standard by alleging that Defendants violated ERISA, not merely by amending the Plan, *contra* Doc. 135 at 27, but also by applying amendments retroactively, failing to provide proper notice to Plaintiffs, and denying beneficiaries full and fair reviews, Doc. 57 at ¶ 207. Each of these alleged breaches implicates the Pension Board and Pension Trustees' duties as fiduciaries to act "solely in the interest" of Plaintiffs as participants and beneficiaries. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (quoting 29 U.S.C. § 1104(a)(1)). Thus, judgment is improper on Plaintiffs' Section 404(a)(1) claims as against the Pension Board and Pension Trustees.

Unlike the Pension Board and Pension Trustees, the Health Fund Board is not alleged to have violated Section 404(a)(1). Plaintiffs have not alleged that any of these breaches (*e.g.*, denying retirement beneficiaries a full and fair review) implicates the Health Fund Board. As a result, the Health Fund Defendants' motion is granted with respect to Plaintiffs' Section 404(a)(1) claim(s) against the Health Fund Board.

**c.** The Health Fund Defendants assert that judgment is proper on Plaintiffs' Section 406(a)(1)(B) claim against the Health Fund Board because it did not extend credit to the Pension Trust when it refunded Lofthouse's unused premiums. Doc. 112 at 44; *see* Doc. 57 ¶¶ 207, 200; *see also* Doc. 123 at 46. They argue that the Pension Trust paid premiums to the Health Fund under the mistaken belief that Lofthouse qualified for benefits, that the Health Fund Board merely refunded this money back to the Pension Trust, and that this activity does not constitute extending credit. Doc. 112 at 44–45.

Section 406(a)(1)(B) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes "a lending of money or other extension of credit between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(B). "Congress enacted § 406 'to bar categorically a transaction that [is] likely to injure the pension plan.'" *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)).

Refunding overpayment of health premiums is neither "a lending of money" nor "other extension of credit." *Bush v. Liberty Life Assurance Co. of Bos.*, 130 F. Supp. 3d 1320, 1329 (N.D. Cal. 2015) (holding a benefits denial determination and recovery of overpaid benefits "is not the type of transaction [Section 406(a)] was intended to address"). Plaintiffs identify no contrary law suggesting that a refund equates to a loan or other "extension of credit." Plaintiffs' single conclusory argument that "paying funds . . . constituted an extension of credit by the Health Plan to the Pension Plan," Doc. 123 at 46, both fails to respond to the Health Fund Defendants' arguments, Doc. 112 at 45–46 & Doc. 135 at 28, and lacks legal support which would compel a different conclusion. As a result, the Health Fund Defendants' motion is granted with respect to Plaintiffs' Section 406(a)(1)(B) claim.

The Pension Defendants are also entitled to judgment as a matter of law with regard to this claim. Plaintiffs have not alleged that the Pension Defendants were the party that "extended credit." To the contrary, they received funds that had (allegedly) been improperly released. As a result, the Pension Defendants' motion is granted with respect to Plaintiffs' Section 406(a)(1)(B) claim.

**d.** The Health Fund Defendants also argue that judgment on Plaintiffs' Section 406(b)(2) claim is proper because the Health Fund Board did not act with an interest adverse to either the Health Fund or its participants, like Lofthouse, when it refunded Lofthouse's unused healthcare premiums to the Plan. Doc. 112 at 45. That Section prohibits a "fiduciary with respect to a plan" from acting in "any transaction involving the plan" when taken "on behalf of" an adverse party—*i.e.*, one "whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). Section 406, like ERISA's other fiduciary provisions, "w[as] designed to prevent a trustee from being put into a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *NLRB v.*

15

*Amax Coal Co.*, 453 U.S. 322, 334 (1981) (citation and internal quotation marks omitted).

Plaintiffs' allegations also do not state a claim for a Section 406(b)(2) violation against the Health Fund Defendants. Violations of Section 406(b)(2) generally involve "using the assets of one plan to loan money to the other plan." *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469–70 (9th Cir. 1994) (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1228 (9th Cir. 1983)); *Reich v. Compton*, 57 F.3d 270, 289 (3d Cir. 1995) (finding a possible violation "when a plan loans money to or borrows money from another party") (citing *Cutaiar v. Marshall*, 590 F.2d 523, 529 (3d Cir. 1979)). That is not what happened here. The Health Fund Board did not act adversely to the Health Fund or its participants because "regardless of to whom the Health Fund remitted the refunded premiums, its financial position would remain the same." Doc. 112 at 45; *see also Swain v. Wilmington Tr., N.A.*, No. 17-71, 2018 WL 934598, at *6 (D. Del. Feb. 16, 2018) (denying the defendant's motion to dismiss where the fiduciary acted on behalf of party in a loan transaction which "greatly benefited" that party to the detriment of the plan).

*Cutaiar* does not support Plaintiffs' claim. *Contra* Doc. 123 at 46. Liability arose in *Cutaiar* because the board members of two interconnected funds were identical, and those members voted to loan money from one fund to the other. 590 F.2d at 525. The court found that the loan was prohibited by Section 406(b)(2) because, "in acting on both sides of a loan transaction," the fiduciaries could not "negotiate the [b]est terms for either plan;" in other words, the borrower could not seek the lowest interest rate possible because that would harm the lender. *Id.* at 530. That situation is not present here. Even if there is overlap between the fiduciaries of the Health Fund and Pension Plan, one plan did not borrow money from the other such that they were automatically adverse under *Cutaiar*. *Contra* Doc. 123 at 46; *see also Ershick v. United Mo. Bank of Kan. City, N.A.*, 948 F.2d 660, 671 (10th Cir. 1991) ("[U]nless the act complained of falls within the specific list of dealings proscribed by § 1106 the transaction does not constitute a per se violation of ERISA."). The Pension Trust and Health Fund are not in a borrower-lender relationship and do not have similar adverse interests which would support a violation of Section 406(b)(2). The Health Fund Defendants' motion is therefore granted with respect to Plaintiffs' Section 406(b)(2) claim of Count II.

Once again, the Pension Defendants are entitled to judgment as a matter of law on Plaintiffs' Section 406(b)(2) claim. Plaintiffs did not

allege that the Pension Defendants were the party that refunded Lofthouse's unused premiums. Rather, they were the recipient. As a result, the Pension Defendants' motion is granted with respect to the Section 406(b)(2) claim.

### 2

In Count III, Plaintiffs claim that three Plan amendments violate Section 204(g)'s anti-cutback provisions, 29 U.S.C. § 1054(g), and that the Pension Defendants failed to provide adequate notice of pension plan amendments in violation of Section 204(h), 29 U.S.C. § 1054(h).[4] Doc. 57 at 40–41. An explanation of the amendments at issue and Section 204(g) itself is helpful to contextualize the parties' arguments.

As noted, Plaintiffs allege the Plan was amended in three material respects. First, Plaintiffs allege the Pension Defendants deprived the Plan of a specific definition of "retirement" by changing the heading of Plan Section 8.08. Doc. 123 at 10. They allege that Plan Section 8.08—requiring that participants cease boilermaker work to be considered retired—constitutes the only definition of retirement in the Plan. Doc. 57 at ¶ 48; Doc. 123 at 27. That Section states that "to be considered retired and entitled to a pension," a participant must "withdraw . . . and refrain from" working in or supervising job classifications included in a boilermakers collective bargaining agreement. Doc. 71-1 at § 8.08. Plaintiffs allege that they retired according to Section 8.08. Doc. 57 at ¶ 50.

Second, Plaintiffs allege the Pension Defendants changed the way they determined eligibility for early retirement. Doc. 57 at ¶¶ 140, 216. Specifically, they claim the Pension Defendants imposed an unwritten 90-Day Rule that presumes a lack of intent to retire if any participant engages in *any* work for an alleged contributing employer within 90 days of retiring. *Id.* at ¶¶ 140–41. As a result, anyone falling into this category would be denied benefits. *Id.*

---

[4] Plaintiffs purport to assert these claims against all Defendants and, as a result, all Defendants move for 12(c) relief. But the factual allegations fail to allege any act or omission as it relates to the Plan amendments that in any way implicates the Health Fund Defendants. Doc. 112 at 42; Doc. 123. As a result, the motion is granted as to the Health Fund Defendants with respect to Plaintiffs' Count III claim(s).

Third, the Plan was amended (in 2002 and 2015) to expand the authority for the Pension Defendants to recover overpayments. Specifically, the Plan was permitted to seek overpayments from participants in any amount regardless of whether their benefits were suspended or terminated and even after a participant's death. Doc. 57 at ¶¶ 170–72.

As noted, Plaintiffs assert each of these amendments violates Sections 204(g) and (h). Section 204(g) prohibits plan amendments that reduce benefits, including early retirement benefits, once they have accrued in a participant's favor. 29 U.S.C. § 1054(g)(1)–(2). "An 'accrued benefit' is an individual's right to a retirement benefit, including early retirement benefits." *Kerber v. Qwest Pension Plan*, 572 F.3d 1135, 1145 (10th Cir. 2009). Thus, to show a violation of the anti-cutback rule, a plaintiff must demonstrate that the plan was amended and that the amendment decreased a benefit that was "earned by service before the amendment was passed." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004). For example, the participant in *Heinz* "worked and accrued retirement benefits under a plan with terms allowing him to supplement retirement income by certain employment," and the Supreme Court observed that "he was being reasonable if he relied on those terms in planning his retirement." *Id.* Consequently, when the plan was amended to further limit the types of work that a retired participant could do, the amendment violated ERISA's anti-cutback provision. *Id.* at 744–45.

Section 204(h) is also implicated by the allegations in Count III. Section 204(h) requires advance notice of pension plan amendments that result in "a significant reduction in the rate of future benefit accrual." 29 U.S.C. § 1054(h)(1). This includes an amendment that "eliminates or significantly reduces an early retirement benefit." 26 C.F.R. § 54.4980F-1(A-1)(a).

The Pension Defendants seek judgment as a matter of law. They argue that judgment in their favor is proper because these changes to the Plan did not constitute actual amendments and, even if they did, those changes did not cause an impermissible cutback under Section 204(g). Doc. 112 at 29, 32. For the following reasons, the Pension Defendants' motion is granted with regard to the overpayment amendments but denied as to the definition of and eligibility for retirement.

**a.** The Pension Defendants assert that changing the heading of Plan Section 8.08 from "Retirement" to "Disqualifying Employ-

ment," and imposing the separation from service rule were mere alterations to their *interpretation* of "retire" rather than true Plan amendments. Doc. 112 at 29–30 (comparing Doc. 71-1 at § 8.08 with Doc. 71-3 at § 8.08). And novel interpretations are not amendments, they argue, unless "the initial interpretation or practice, which approved the benefit . . ., was reasonable or tenable based on the existing provisions of the plan when the benefits at issue were approved." Doc. 112 at 30 (quoting *Metzgar v. U.A. Plumbers and Steamfitters Loc. No. 22 Pension Fund*, 13-CV-85V(F), 2019 WL 1428083, at *10 (W.D.N.Y. Mar. 28, 2019)). In other words, unlike a new rule that selects between two viable interpretations of a provision, a new rule that merely corrects a prior erroneous interpretation is not an amendment. Prior interpretations, according to the Pension Defendants, were plainly erroneous for their failure to comport with IRS rules. *Id.* at 30–31.

That argument fails because it is not clear that the Pension Defendants' earlier interpretations were plainly erroneous. Plaintiffs argue that the initial interpretations were reasonable because in-service distributions do not conflict with IRS rules, *see* Doc. 138, and because the Pension Defendants "received favorable [IRS] determination letters" for decades, *id.* at 29. They also assert that the Pension Defendants' arguments regarding tax compliance should be met with skepticism—they apparently learned that decades of benefits payments compromised their tax status but neither disclosed those errors to the IRS nor legitimately amended the Plan. Doc. 123 at 29–30. And even if these Defendants' prior interpretations were erroneous, it is not so clear as to support judgment at this juncture that the Pension Defendants' new interpretation was permissible. *Cf. LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 809 (10th Cir. 2010) (rejecting an unwritten interpretation of an undefined plan term which "inject[ed] a different spin to the analysis and, depending upon how broadly it [wa]s interpreted, could drastically reduce coverage under the [] policy."); *Cottillion v. United Refin. Co.*, 781 F.3d 47, 58 (3d Cir. 2015). Moreover, IRS rules and regulations do not override ERISA—a plan can violate ERISA even if its goal is tax compliance. *Cottillion*, 781 F.3d at 51–53, 55; *Carter v. Pension Plan of A. Finkl & Sons Co. for Eligible Off. Emps.*, 654 F.3d 719, 724–25 (7th Cir. 2011) (citing *Heinz*, 541 U.S. at 746–47).

*Metzgar*, an unpublished decision from the Second Circuit, does not support the Pension Defendants' arguments. *Contra* Doc. 112 at

30; Doc. 259. Most notably, the plan there did not define either retire or retirement. *Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*, No. 20-3791, 2022 WL 610340, at *3 (2d Cir. Mar. 2, 2022); *Metzgar*, No. 13-85, 2019 WL 1428083, at *9 (W.D.N.Y. Mar. 28, 2019). And it involved a different procedural posture—the court ultimately determined on cross motions for summary judgment that the plan's interpretation of the meaning of "retire" was not arbitrary and capricious. *Metzgar*, 2022 WL 610340, at *2. Plaintiffs have alleged that the Plan here *did* define retire in Section 8.08, that they relied on that definition, and that the actual terms of the Plan were changed by way of this amendment. Doc. 123 at 28; *see also Metzgar*, 2022 WL 610340, at *3 (defining an amendment) (citing *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 184 (2d Cir. 2013)).

Plaintiffs have stated a plausible claim that the Section 8.08 Amendment reduced an accrued benefit in violation of Section 204(g)—*i.e.*, they lost the ability to work in certain jobs post-early retirement while receiving those benefits. *Heinz*, 541 U.S. at 744 ("[A]n amendment placing materially greater restrictions on the receipt of the benefit 'reduces' the benefit just as surely as a decrease in the size of the monthly payment."). The Pension Defendants' motion is therefore denied with respect to Plaintiffs' claim related to modifying Plan Section 8.08.

**b.** The Pension Defendants next argue that no strict 90-Day Rule exists that would violate Section 204(g)'s anti-cutback provision. Doc. 112 at 32. In particular, they argue that "no rule exists in the Pension Plan that prevents a participant from returning to work within 90 days." *Id.* Although they also acknowledge that the Pension Trust may use the 90-Day Rule to flag that a participant lacks intent to retire, they consider the rule a permissible interpretation of retire rather than an amendment. *Id.*

At this stage of the proceedings, that argument fails. The Pension Defendants' argument that no such rule exists is contrary to the Amended Complaint's factual allegations, *see* Doc. 57 at ¶¶ 57, 140, and cannot be credited at this point, *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). And, for the reasons just stated, determining whether these Defendants' interpretations were reasonable is improper at this stage. Plaintiffs' Amended Complaint plausibly alleges that the Pension Defendants amended the Plan through an unwritten rule and that the amendment decreased their rights to existing benefits by "placing greater restrictions on the receipt of benefits" in violation of Section 204(g). Doc. 57 at ¶¶ 140–

41, 216; *Heinz*, 541 U.S. at 744; *see Battoni v. IBEW Loc. Union No. 102 Emp. Pension Plan*, 594 F.3d 230, 237 (3d Cir. 2010). The Pension Defendants' motion is therefore denied with respect to the 90-Day Rule.

   **c.** Finally, the Pension Defendants assert that what Plaintiffs call the overpayment amendments, which removed all limits on type and amount of recovery after the participant reached normal retirement age, Doc. 57 at ¶¶ 170–72, did not decrease accrued benefits in violation of Section 204(g). Doc. 112 at 32–33. According to the Pension Defendants, any change in the overpayment provision did not alter the amount of benefits received, but only how quickly the Pension Trust could recoup overpayments. *Id.* Participants received funds to which they were not (at the time) entitled, and a pure offset against their benefits at normal retirement age does not reduce the total amount they will ultimately receive. *Id.*

   The overpayment amendments did not violate Section 204(g). Before and after the overpayment amendments, the value of Plaintiffs' pension rights remained unchanged. *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744–45 (2004) (finding the focus of the anti-cutback provision is to prevent "shrinking the value of . . . pension rights and . . . promised benefits"). The Plan could always offset Plaintiffs' benefits "until the overpayment amounts were recovered." Doc. 57 at ¶¶ 170–71. Plaintiffs only summarily argue that these amendments "reduced Plaintiff Lofthouse's accrued benefits by imposing substantial additional restrictions on his right to retirement benefits," Doc. 123 at 37, without providing any explanation as to what reduction they believe actually occurred as to Lofthouse. And, importantly, this is not a case where the Plan *eliminated* a no-offset rule. *See, e.g.*, *Michael v. Riverside Cement Co. Pension Plan*, 266 F.3d 1023, 1026 (9th Cir. 2001) (holding a pension plan liable for an amendment requiring a beneficiary to pay back early retirement benefits). Instead, the amendments merely affected how and when the Plan could recoup the overpayments. The Pension Defendants are granted judgment on the portions of Plaintiffs' Section 204(g) claims related to the overpayment amendments only.

   **d.** The Pension Defendants argue they are entitled to judgment as a matter of law on Plaintiffs' Section 204(h) claims because, even if the changes were amendments, they could not be expected to actually reduce early retirement benefits. Doc. 112 at 33–34. Section 204(h) requires notice of pension plan amendments that result in "a significant reduction in the rate of future benefit accrual." 29 U.S.C. § 1054(h)(1). This includes an amendment that "eliminates or signifi-

cantly reduces an early retirement benefit." 26 C.F.R. § 54.4980F-1(A-1)(a). While the overpayment amendments did not affect Plaintiffs' benefits accrual, because they did not reduce the value of benefits, the Section 8.08 change and the 90-Day Rule could foreseeably reduce early retirement benefits as they changed the way the Pension Defendants determined Plaintiffs' eligibility for benefits. *Contra* Doc. 112 at 33–34; Doc. 57 at ¶ 217. On those facts, the Pension Defendants failed to provide notice of these amendments as required by Section 204(h). *See Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005) (observing that Sections 204(g) and 204(h) "appear to be intrinsically tied together in that it is the effect" of an amendment which violates Section 204(g) which triggers Section 204(h)'s notice requirement)); *see also Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*, 663 F. Supp. 2d 700, 708 (E.D. Wis. 2009) (holding that, because there was no Section 204(g) violation, notification under Section 204(h) was not necessary)). The Pension Defendants' argument that these changes were mere interpretations rather than amendments fails again. *Contra* Doc. 112 at 32–34; *see* Part III.B.2.a., *supra*. The same is true for their argument that Section 204(h) does not apply because Plaintiffs never severed their employment because it contradicts the allegations in the Amended Complaint, Doc. 57 at ¶¶ 48, 59, 140–41, and cannot be credited at this stage, *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Pension Defendants are granted judgment on the portions of Plaintiffs' Section 204(h) claims related to the overpayment amendments only.

### 3

In Count IV, Plaintiffs assert that that the Pension Defendants failed to maintain a written plan in violation of Section 402, 29 U.S.C. § 1102, and failed to provide accurate summary plan descriptions in violation of Sections 101 and 102, 29 U.S.C. §§ 1021–22, and 104(b), 29 U.S.C. § 1024.[5] Doc. 57 at 42–44. Specifically, Plaintiffs claim the Pension Defendants are imposing a rule that participants must stop working for Plan-contributing employers for 90 days, which exists nowhere in the Plan. Doc. 123 at 11–12. The Pension Defendants

---

[5] Plaintiffs, again, purport to assert these claims against all Defendants and, as a result, all Defendants move for 12(c) relief. But again, the factual allegations fail to allege any act or omission as it relates to the Plan administration that in any way implicates the Health Fund Defendants. As a result, the motion is granted as to the Health Fund Defendants with respect to Plaintiffs' Count IV claim(s).

argue that judgment in their favor is proper because no such rule exists, written or unwritten. Doc. 112 at 34. Further, they claim they notified Plaintiffs through summary descriptions that participants must intend to retire to qualify for benefits. *Id.* at 35.

"One of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Section 402 mandates that all ERISA plans be in writing and specify the bases on which benefits decisions will be made. *Id.*; *accord* 29 U.S.C. § 1102. Sections 101, 102, and 104(b) require and prescribe the contents of summary plan descriptions and annual plan reports. *Curtiss-Wright*, 514 U.S. at 83; 29 U.S.C. §§ 1021, 1022, 1024(b).

The Pension Defendants' motion is denied. The Amended Complaint adequately alleges that a 90-Day Rule exists and that Plaintiffs did intend to retire as they argue that term was defined in the Plan at the time the retired. The Pension Defendants' argument to the contrary must be rejected because, again, it relies on a version of the facts that may not be credited at this stage. Defendants argue that Plaintiffs' allegations need not be accepted where they contradict controlling documents, *i.e.*, the Plan documents, in the record. *See* Doc. 135 at 20–21. But Plaintiffs are not arguing that the Plan requirements are other than what they appear; they are arguing that Defendants—through the imposition of additional unwritten rules, the existence of which cannot be proven or disproven via materials properly before the Court—failed to faithfully interpret and apply Plan provisions. That is adequate to state a claim.

In their reply, the Pension Defendants briefly argue that these failures to maintain a written plan and to provide accurate summary plan descriptions were effectively nullified because Plaintiffs were otherwise on notice of a "separation of service" requirement, as it was referenced in the applications that Plaintiffs completed when they signed up for benefits. *See* Doc. 135 at 23. But new arguments made for the first time in a reply cannot be considered. *See, e.g.*, *United States v. Mannie*, 971 F.3d 1145, 1158 n.19 (10th Cir. 2020); *Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 989 (D. Kan. 2019). And even were that not so, the Pension Defendants have cited no support for their argument that Plaintiffs' potential notice was sufficient to overcome clear written plan requirements.

4

Plaintiffs' Count V alleges that the Pension Defendants violated Section 503's claims procedure requirements and denied them a full and fair review.[6] Doc. 57 at 45–46; Doc. 123 at 40. The Pension Defendants argue that they are entitled to judgment not because they actually complied, but rather because they substantially complied with the requirements of Section 503 and its implementing regulations. Doc. 112 at 36–37.

Section 503 and its applicable regulations require two things. 29 U.S.C. § 1133. First, Section 503 requires notice of denial. Employee benefit plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." *Id.* § 1133(1). Section 503's implementing regulations provide that the notice of claim denial must provide "the specific reason or reasons for the adverse determination" as well as descriptions "of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary" and "the plan's review procedures and [applicable] time limits." 29 C.F.R. § 2560.503–1(g)(1)(i), (ii), (iv). The notice must also refer "to the specific plan provisions on which the determination is based." *Id.* § 2560.503–1(g)(1)(iii). Second, Section 503 requires plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2).

The Amended Complaint adequately alleges that the Pension Defendants did not fulfill Section 503's requirements. Plaintiffs assert that these Defendants failed to provide both "citation[s] to Plan provisions upon which" the Pension Defendants' benefits terminations were based and "a description of additional material[s]" needed to perfect their claims." Doc. 57 at ¶¶ 96, 231. Plaintiffs also allege that the claims procedures were unreasonable under 29 C.F.R. § 2560.503–1(b)(5) because they did not "contain administrative processes and safeguards designed to ensure . . . that benefit claim determinations [we]re made in accordance with governing plan docu-

---

[6] As with Counts III and IV, Plaintiffs' attempt to assign liability for Count V to the Health Fund Defendants fails for want of factual support. The Health Fund Defendants' request for dismissal is therefore granted.

ments and that . . . plan provisions [were] applied consistently with respect to similarly situated claimants." Doc. 57 at ¶¶ 228, 230.

The Pension Defendants' contrary argument fails. Doc. 112 at 36–37. To begin with, it is not clear that substantial compliance with Section 503 is the governing standard. *See LaAsmar*, 605 F.3d at 799-800; *Kellogg v. Met. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008); *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580, 592 (10th Cir. 2019) (declining to address the issue because the court found no procedural irregularities); *but see Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1211 (10th Cir. 2014) (suggesting that substantial compliance remains the applicable standard for non-deadline violations so long as the claimant has not been prejudiced by "deviations from ERISA's notice requirements"). But even if it were, it is not satisfied in this case.

Substantial compliance is generally found when the plan administrator's non-compliance with Section 503's requirements did not prejudice the claimant. *See Holmes*, 762 F.3d at 1211. And the purpose of substantial compliance is to ensure that the claimant has a "sufficiently clear understanding of the administrator's position" and a "fair chance" to present his or her case. *Niebauer v. Crane & Co.*, 783 F.3d 914, 927 (1st Cir. 2015).

The allegations in the Amended Complaint contradict a finding of substantial compliance. Plaintiffs allege that the Pension Entities failed to cite specific Plan provisions in the original denials, *see, e.g.*, Doc. 57 at ¶ 90,[7] and relied on new and conflicting grounds for denial at the conclusion of Plaintiffs' administrative appeals, *see, e.g., id.* at ¶ 103. In their original denial letters, the Pension Defendants appear to base their decisions on Plaintiffs' failure to separate from service with *contributing employers*. *See, e.g.*, Doc. 80-5 at 16–17. In contrast, the appeals denial letters cite several Plan provisions, including those related to willful false statements, and appear to base their decisions on a *lack of subjective intent* to retire, or "bona fide" separation from service. *See, e.g., id.* at 1–3. Plaintiffs have further alleged that these actions "chilled, delayed and thwarted" their rights to pursue their claims. Doc. 57 at ¶ 232. Plaintiffs have adequately alleged that the

---

[7] The Pension Defendants admit that the original denial letters failed to cite any Plan provisions, except for Plaintiff Lofthouse's original denial letter, which cited a single Plan provision stating only that the Plan will be interpreted in accordance with applicable law. Doc. 112 at 37.

Pension Defendants did not substantially comply with Section 503 because their violations were neither "inconsequential" nor "in the context of an on-going, good-faith exchange of information." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003). The Pension Defendants' motion is denied with respect to Plaintiffs' Count V.

5

In Count VII, Plaintiffs assert a claim invoking ERISA's nonforfeitability provision, Section 203(a), 29 U.S.C. § 1053(a).[8] Plaintiffs allege that the Pension Defendants violated this provision by requiring Plaintiffs to re-apply (and obtain new annuity start dates) for their normal retirement age benefits after the revocation of their early retirement benefits, Doc. 57 at ¶ 243, and by recouping early retirement overpayments through a total offset of Plaintiffs' normal retirement age benefits, *id.* at ¶¶ 136–37, 243.[9] The Pension Defendants argue that they are entitled to judgment as a matter of law because they did not violate Section 203(a), either by requiring Plaintiffs to re-apply for their normal retirement age benefits or by recouping early retirement overpayments. Doc. 112 at 38–39.

Under Section 203, every plan must provide that a participant's right "to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). ERISA defines a "nonforfeitable" right as a claim which "arises from a participant's service, which is unconditional," 29 U.S.C. § 1002(19), and "which, at a particular time, is conditioned under the plan upon a

---

[8] Count VI appears to be asserted only on behalf of Phillips and Eggers and, based on the allegations, appears to be directed only at the Pension Defendants. Doc. 57 at 46–48. The Pension Defendants do not seek judgment as a matter of law and, instead, reserve the right to seek summary judgment on this claim. Doc. 112 at 28 n.9. As Defendants argue, *id.* at 42, Plaintiffs do not allege that Health Fund Defendants failed to provide retirement Plan documents. Thus, the Health Fund Defendants' motion is granted with respect to Plaintiffs' Count VI claim.

[9] As with Counts III, IV, and V, the Amended Complaint asserts these claims against all Defendants but there are no allegations of fact suggesting that the Health Fund Defendants in any way impacted Plaintiffs' rights to retirement benefits. Doc. 112 at 42; Doc. 123. Once again, the Health Fund Defendants' motion is granted with respect to Plaintiffs' Count VII claim(s).

subsequent event, subsequent performance, or subsequent forbearance which will cause the loss of such right," 26 C.F.R. § 1.411(a)–4(a); *see also* 29 U.S.C. § 1202(c) (making Treasury regulations under 26 U.S.C. 410(a)–412 applicable to ERISA's "minimum participation, vesting, and funding standards").

Plaintiffs plausibly allege that the Pension Defendants violated Section 203 by requiring them to re-apply for benefits after they took advantage of their early retirement benefits. They assert that they did, in fact, retire as they understood that requirement under the Plan as it existed at the time. Doc. 57 at ¶¶ 54, 59. They further assert that the Pension Defendants are imposing new conditions—limiting post-retirement employment and applying the 90-Day Rule—on Plaintiffs right to receive benefits they had earned. Doc. 123 at 41–42. "It is the *claim* to the benefit, rather than the benefit itself," that is nonforfeitable, *i.e.*, "must be 'unconditional' and 'legally enforceable against the plan.'" *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 371 (1980) (emphasis added). According to the Amended Complaint, the Pension Defendants changed the rules, and this affected Plaintiffs' rights to receive benefits.

The Pension Defendants' claim that their actions were proper as a matter of law fails because it assumes facts contrary to those alleged by Plaintiffs. They briefly argue that Plaintiffs should not be able to use their original annuity start dates because they did not intend to actually retire. Doc. 112 at 39. In other words, they did not lose benefits or a preferable annuity start date from returning to work—they were simply never entitled to these things. *See id.* But Plaintiffs have made specific, nonconclusory allegations that they did, in fact, retire and that their benefits were impacted due to changes in post-retirement work requirements and the imposition of the 90-Day Rule.

Plaintiffs have also plausibly alleged that the Pension Defendants violated Section 203 by recouping overpayments. Under Section 203, plan administrators may suspend benefits during periods of certain types of employment without running afoul of nonforfeiture rules. But 29 C.F.R. 2530.203-3 limits that exception. *See* 29 U.S.C. § 1053(a)(3)(B) (enabling the regulation). That regulation permits plans to "provide for the suspension of pension benefits which commence *prior to the attainment of normal retirement age*." 29 C.F.R. 2530.203–3(a) (emphasis added). But suspension is only permitted if it "*does not affect a retiree's entitlement to normal retirement benefits* payable after attainment of normal retirement age." *Id.* (emphasis added). And in the event that a plan issues payments before a permissible

suspension takes place, then it may recoup these payments via offset against normal retirement benefits—but only by up to 25 percent of a given month's benefits (plus 100 percent of the first month). *Id.* at (b)(1)–(3). Plaintiffs have alleged that the Pension Defendants are withholding all of Lofthouse's benefits post-normal retirement age. Doc. 123 at 42; Doc. 57 at ¶¶ 136–37. At this stage, Plaintiffs have plausibly alleged that the Pension Defendants have violated these applicable regulations.

The Pension Defendants' argument to the contrary is unconvincing. These Defendants rely on the aforementioned exception to Section 203—that a plan "may temporarily withhold the monthly retirement benefits of a retiree to recover an overpayment of benefits paid to the retiree before he or she attained normal retirement age." Doc. 112 at 38 (quoting 60A Am. Jur. 2d. Pensions § 258). But that exception is inapplicable because, as mentioned above, a plan may only withhold up to 25 percent of monthly benefits, and Plaintiffs have alleged that the Pension Defendants are withholding all of Lofthouse's normal retirement age benefits. Doc. 123 at 42. The Pension Defendants' motion is denied with respect to Plaintiffs' Count VII.

## 6

In Count VIII, Plaintiffs allege that the Health Fund improperly assigned or alienated pension benefits in violation of Section 206(d), 29 U.S.C. § 1056(d).[10] Plaintiffs allege that the Health Fund Defendants violated Section 206(d) by refusing to refund to Lofthouse his Pension Plan payments and instead transferred those payments back to the Pension Trust.[11] Doc. 57 at 49–50. The Health Fund Defendants assert they are entitled to judgment as a matter of law because the refusal to refund the premiums to Lofthouse and instead transfer those premiums back to the Pension Plan did not constitute an unlawful transfer. Doc. 112 at 48.

---

[10] It is not entirely clear on whose behalf this claim is made. Perhaps it is just Lofthouse, perhaps it is all four individual plaintiffs, or maybe even other putative Class Members. Doc. 57 at ¶¶ 248-50. Pending further clarification, this Order assumes it is for all four Plaintiffs.

[11] As with Counts III, IV, V, and VII, the Amended Complaint asserts these claims against all Defendants but this time there are no allegations of fact suggesting that the Pension Defendants had any involvement in the alleged deprivation. Doc. 112 at 39; Doc. 123 at 42–43. The Pension Defendants' motion for judgment as a matter of law is therefore granted.

A transfer between a pension plan and a healthcare plan is not an alienation or improper assignment within the meaning of Section 206(d). That provision reads as follows: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d). The applicable governing regulation provides that neither a recoupment from a participant nor a transfer "of benefit rights from the plan to another plan" will constitute an assignment or alienation. 26 C.F.R. § 1.401(a)-13(c)(2)(iii)–(iv); *see also Coar v. Kazimir*, 990 F.2d 1413, 1422 (3d Cir. 1993) (finding Section 206(d)'s governing regulations "specifically exclude from ERISA's anti-alienation bar actions by the pension plan itself to . . . recover debts owed by the participant to the plan as a result of a prior over-payment of benefits"). Forbidden assignments and alienations are defined as "[a]ny direct or indirect arrangement . . . whereby a party acquires *from a participant* or beneficiary a right or interest enforceable *against the plan* in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. § 1.401(a)-13(c)(1)(ii) (emphases added); *see also Boggs v. Boggs*, 520 U.S. 833, 851 (1997) (explaining that the anti-alienation rule exists to prevent dissipation of retirement funds before retirement). In fact, Section 206(d) has been referred to as a "spendthrift" provision, meant to protect a participant "from his own financial improvidence in dealings with third parties" and to ensure that his benefits are available upon retirement. *Hawkins v. Comm'r*, 86 F.3d 982, 988 (10th Cir. 1996) (citation omitted); *Mack v. Kuckenmeister*, 619 F.3d 1010, 1017 (9th Cir. 2010) (noting Section 206(d) "forbids a beneficiary from assigning or alienating his rights to pension plan benefits").

It matters not that Lofthouse contested the overpayment. *Contra* Doc. 123 at 42–43 (citing *Hendrian v. AstraZeneca Pharm. LP*, No. 3:13-CV-00775, 2015 WL 404533, at *6 (M.D. Pa. Jan. 29, 2015)). The only authority Plaintiffs offer is *Hendrian*, which did not contemplate (much less hold) that a beneficiary's decision to contest recoupment constitutes a violation Section 206(d). Rather, that court merely denied summary judgment on arbitrary and capricious review because there were insufficient facts in the record to calculate the amount of the plaintiff's benefits under the plan. *See* 2015 WL 404533, at *6–7. There appears to be no legal authority that has been provided by the parties to suggest that the type of transfer at issue here violates Section 206(d) irrespective of whether the beneficiary contests it or not. In fact, the law appears to the contrary. *See Tucker v. General Motors Retirement Program*, 949 F. Supp. 47, 53-54 (D. Mass.

1996) (citing 26 C.F.R. § 1.401(a)-13(c)(2)(iii)–(iv) in support of the conclusion that set offs of retirement benefits to recoup overpayment were permissible under Section 206(d)). As a result, the Health Fund Defendants' motion is granted with regard to Count VIII.

## C

In Count IX, Plaintiffs allege that Defendants should be equitably estopped from denying that Plaintiffs are entitled to their pension benefits. Doc. 57 at ¶¶ 251-254. Plaintiffs assert these claims against all Defendants and all Defendants move for Rule 12(c) relief.

**1.** The Health Fund Defendants argue, Doc. 112, and Plaintiffs do not dispute, Doc. 123, that only two Counts (II and VIII) implicate the Health Fund Defendants. Plaintiffs have failed to allege a plausible ERISA violation against the Health Fund Defendants in those two Counts. *See* Part III.A.1. & 6., *supra.* As a result, their equitable estoppel claim under Section 502(a)(3) is also precluded. The Health Fund Defendants' motion is granted with respect to Plaintiffs' Count IX claim.

**2.** The Pension Defendants argue that judgment in their favor is proper on Plaintiffs' equitable estoppel claim because, among other reasons, they "have failed to allege facts sufficient to establish a plausible claim to this relief." Doc. 112 at 41. The Supreme Court has recognized equitable estoppel as a potential remedy for ERISA violations via Section 502(a)(3)'s equitable powers. *Cigna Corp. v. Amara*, 563 U.S. 421, 441–43 (2011); *see also Jensen v. Solvay Chems., Inc.*, 721 F.3d 1180, 1185 (10th Cir. 2013). The Tenth Circuit has "not definitively identified the elements of an ERISA claim of equitable estoppel," but it assumed without deciding that the elements from *Palmer v. Metro. Life Ins. Co.*, 415 F. App'x 913, 920 (10th Cir. 2011), were appropriate. *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1187 & n.7 (10th Cir. 2016). *Palmer* identified the following elements: conduct or language amounting to a representation of material fact, awareness of the true facts by the party to be estopped, an intention by the party to be estopped that the representation be acted on, unawareness of the true facts by the party asserting estoppel, and detrimental and justifiable reliance. 415 F. App'x at 920 (citation omitted). As in *Lebahn*, it appears the parties agree that the *Palmer* elements should apply. Doc. 112 at 41; Doc. 123 at 43–44; *see also Lebahn*, 828 F.3d at 1187 (noting the parties assume that the Tenth Circuit should apply the *Palmer* factors).

The allegations in the Amended Complaint satisfy these elements with regard to Plaintiffs' claims against the Pension Defendants. *Contra* Doc. 112 at 41. They allege that the Pension Defendants promulgated a plan and related documents representing one standard of eligibility for benefits, knowing all the while that they would make decisions based on contradictory, or at least additional, factors not disclosed. Doc. 123 at 43–44 (citing Doc. 57 at ¶¶ 164–69, 207). Plaintiffs also allege that they relied on these documents for significant career and retirement planning decisions, without any ability to know that these Defendants would impose other criteria, and that they were injured as a result. *Id.* These allegations satisfy the Rule 12 standards and state a colorable case of estoppel based on the standard set by *Palmer*.

The Pension Defendants briefly argue that Plaintiffs have "failed to specifically identify what ERISA violations support their claim to equitable relief," have not satisfied Rule 9(b)'s higher pleading standards, and cannot assert equitable relief because of unclean hands. Doc. 112 at 40, 41 n.15. First, Section 502(a)(3) authorizes "appropriate equitable relief" for violations of ERISA, *see, e.g.*, *Amara*, 563 U.S. at 425, and Plaintiffs have adequately alleged several ERISA violations in Counts I through VIII. Second, the authority offered by the Pension Defendants does not support the proposition that Plaintiffs must plead estoppel claims based on misrepresentation according to the heightened pleading standard for fraud. Doc. 112 at 40 (citing *Lebahn*, 828 F.3d at 1183). Neither *Lebahn* nor the district court case it affirmed required a heightened pleading standard for such cases. And even if the Pension Defendants had identified Tenth Circuit precedent requiring a heightened pleading standard for estoppel claims based on misrepresentation, the allegations in the Amended Complaint adequately "afford[s] [the Pension Defendants with] fair notice of [Plaintiffs'] claims and the factual grounds supporting those claims." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (citation omitted). Plaintiffs allege that they relied on one standard of eligibility while the Pension Defendants relied on another and failed to disclose it. Doc. 57 at ¶¶ 164–69, 207.

Finally, the Pension Defendants' argument under the doctrine of unclean hands must fail at this stage. Courts do consider "whether the party requesting the equitable-estoppel remedy has engaged in substantial relevant misconduct." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 958 (10th Cir. 2009). Even so, this argument once again relies on facts contrary to those Plaintiffs pled—

namely, Defendants contend that Plaintiffs misstated their intent to retire on their benefits applications, Doc. 112 at 41 n.15., but Plaintiffs have plausibly alleged that did intend to retire, *see, e.g.*, Doc. 57 at ¶ 59, and thus, did not "willfully" make false statements on their applications, *contra* Doc. 112 at 41 n.15. The Pension Defendants' motion is therefore denied as to Plaintiffs' Count IX claim for equitable estoppel.

## IV

For these reasons, Defendants' motion for judgment on the pleadings, Doc. 111, is GRANTED in part and DENIED in part. The Health Fund Defendants are granted judgment on all claims against them. The Pension Defendants are granted judgment on Count VIII and on portions of Counts II and III. The Pension Defendants' motion is denied in all other respects. Further, Plaintiffs' informal requests for oral argument, Doc. 123, and for supplemental briefing, *see* Doc. 138, are DENIED.

It is so ordered.

Date:  April 20, 2023          s/ Toby Crouse
                               Toby Crouse
                               United States District Judge