UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS ALLEN PHILLIPS, *et al.*,

    Plaintiffs,

v.

BOILERMAKER-BLACKSMITH NATIONAL
PENSION TRUST, *et al.*,

    Defendants.

Case No. 19-2402-TC-BGS

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL

This matter comes before the Court on Plaintiffs' Motion to Compel Recordings of Defendants' Calls with Class Members. *See generally* Doc. 300. Defendants oppose the motion arguing that the discovery sought is not proportional to the needs of the case. *See generally* Doc 303. For the reasons stated herein, the motion is **GRANTED in part** and **DENIED in part**.[1]

### I. Background Facts

This dispute concerns the administration of employee benefits in defined pension and retirement health plans. Plaintiffs bring this class action on behalf of themselves and all others situated, and asserts claims against Boilermaker-Blacksmith Pension Trust, Board of Trustees of the Boilermaker-Blacksmith National Pension Trust, and six individual trustees.[2] Plaintiffs participated

---

[1] There are also issues relating to compliance with the District of Kansas Local Rules. Local Rules impose a 10-page limit on briefs filed in relation to a discovery-related motion which encompasses all information from caption to signature block. D. Kan. 7.1(d)(1). Both Plaintiffs' motion brief and Defendants' response brief exceed this limitation and neither filed a motion to exceed such limitation. Additionally, both parties filed voluminous exhibits in their entirety without a prior finding that such materials are essential and leave to file such exhibits in violation of D. Kan. 5.2(e). While the Court declines to strike either brief for these reasons, the Court expects the parties to comply with the Local Rules moving forward.

[2] The Pension Trustees are Scott Anderson, John Fultz, Lawrence McManamon, Lynda Turner, Mike Hidas, and Mark Vandiver.

1

in a multi-employer defined benefit pension plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") and worked as a boilermaker for at least one employer that was party to an International Brotherhood of Boilermakers collective bargaining agreement which required pension contributions.  Plaintiffs filed this lawsuit as a putative class action concerning the administration of their pension and retirement health plans.  They allege that Defendants violated various ERISA requirements and improperly denied Plaintiffs their early retirement benefits.

Highly summarized, Plaintiffs allege that they retired from their boilermaker jobs before normal retirement age and then applied for—and received—early retirement pension benefits. Plaintiffs later resumed work in another type of job (i.e., electrician, safety coordinator, steam fitter, scheduler/planner), but did not engage in any postretirement boilermaker work.  Plaintiffs subsequently received letters notifying them that because they had begun work for another employer who contributed to the Plan, they were no longer entitled to early retirement benefits.  Four named Plaintiffs filed a putative class action lawsuit alleging, *inter alia*, that the Pension Trust is imposing an unwritten 90-day "separation from service" rule ("90-day rule") which Plaintiffs call a Plan amendment, in its eligibility determinations.  Under this rule, if a participant engages in any work for an alleged contributing employer within 90 days of retiring from his or her boilermaker job—even if completely unrelated to boilermaker work— the Pension Trust will automatically conclude that participant lacked a true intent to retire and will deny benefits.

On October 14, 2019, Plaintiffs served its first set of Requests for Production ("RFP") on Defendants which encompassed twenty-seven requests, including RFP 8, 9, and 19[3] which are

---

[3] RFP 8 requests production of all notices and communications to all plan participants whose retirement benefits were revoked.  RFP 9 requests copies of the pension files for every plan participant whose retirement benefits were revoked or denied on the basis of returning to employment.  RFP 19 requests all documents and records, electronic or otherwise, related to any claim by a class member whose retirement benefits were revoked or denied.

2

discussed in this Order.  *See* Doc. 28.  Defendants objected to RFP 8, 9, and 19 claiming that the requests were overbroad and asked for irrelevant information.  Nonetheless, Defendants, "without waiving those objections," either produced some documents that were responsive to each RFP or referred Plaintiffs to documents that were responsive to other RFPs.[4]  *Id.*  Moreover, Defendants produced 109 audio recordings of phone calls associated with the four named plaintiffs in response to Plaintiffs' request for production of audio recordings relating to all class members between March 10 and May 11, 2020.  Such recordings have been used in depositions of Plaintiffs and referenced in multiple filings.  Plaintiffs then filed a motion for class certification on August 7, 2020 (*See* Doc. 100), which was granted on August 31, 2023.  *See* Doc. 266.

Defendants were required to supplement discovery responses by January 12, 2024.  Doc. 272, at 2.  On February 19, 2024, Plaintiffs' counsel notified Defendants of their failure to produce class members recordings pursuant to the previously mentioned requests for production of documents and renewed its request for production of such recordings.  Defendants objected to producing calls for all the class members and the parties conferred regarding the same.  A compromise was reached where Defendants agreed to produce written call logs for ten class members identified by Plaintiffs, after which Plaintiffs would identify what calls they wanted Defendants to produce.  Plaintiffs identified the ten class members on March 8, 2024, and Defendants provided the call logs on March 28, 2024.  On April 3, 2024, Plaintiffs identified 144 calls to be produced by Defendants (out of 267 calls on the logs).  On May 2, 2024, Defendants

---

[4] Defendants' original objections to RFPs 8, 9, and 19 stated that, "without waiving the objection," documents requested under each RFP were not relevant to Plaintiffs' claims while simultaneously referring Plaintiffs to documents which are responsive to each RFP.  Defendants' objections to RFPs 8, 9, and 19 are conditional objections.  *See e.g.*, *Zone Five, L.L.C. v. Textron Aviation, Inc.*, No. 20-1059-DDC-KGG, slip op, 2023 WL 5206046, at *4 (D. Kan. Aug 14, 2023) ("[O]bjections followed by a response 'without waiving objections' are 'manifestly confusing (at best) and misleading (at worst) and have no basis in the Federal Rules of Civil Procedure'") (alteration in original) (citation omitted).  However, Plaintiffs did not raise this issue in their brief and the time to do so has passed.  *See* D. Kan. Rules 37.1(c).  Therefore, the Court will not address whether Defendants waived their objections to RFPs 8, 9, and 19.

produced nine of the call recordings requested by Plaintiffs but notified Plaintiffs that "the process of retrieving the requested recordings has proved even more burdensome than anticipated," because the recordings were not maintained in a format in which participant identifying information and timing of the calls were easily discernible.  The remaining 135 recordings of the previously agreed upon sample remain to be produced.  To date, Defendants have produced a total of 118 calls related to the Plaintiffs.

After satisfying their obligations to meet and confer and engaging the Court in a pre-motion discovery conference pursuant to D. Kan. Rule 37.1 and 37.2, Plaintiffs filed the present motion. Plaintiffs move to compel Defendants responses to Plaintiffs' RFPs 8, 9, and 19 and produce all recordings between Defendants and the 111 class members.  Plaintiffs claim that they are entitled to the recordings and that Defendants cannot meet their burden to show that the burden imposed to produce such recordings is disproportionate to the needs of the case.  Defendants object that Plaintiffs' requested production is not responsive to Plaintiffs' RFP 8, but they do not offer an objection related to the responsiveness of RFPs 9 and 19.  Defendants further argue that Plaintiffs' request is unduly burdensome given the marginal relevance of the recordings, and invokes HIPAA concerns.  Plaintiffs' motion is ripe, and the Court is prepared to rule.

## II.   Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery.  It provides:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Accordingly, the requested information must be "nonprivileged, relevant, and proportional

4

to the needs of the case to be discoverable." *United States ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2023 WL 3224180, at *2 (D. Kan. May 3, 2023).

Discovery requests must be relevant on their face. *Id.* Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Fish v. Kobach*, 321 F.R.D. 395, 399 (D. Kan. 2017). There is a general presumption in favor of disclosure at the discovery stage. *See In re Motor Fuel Temp. Sales Practices Litigation*, No. 07-MD-1840-KHV, 2009 WL 959493, at *4 (D. Kan. Apr. 3, 2009). "Information within this scope of discovery need not be admissible in evidence to be discoverable … [and] should proceed unless it is clear that the information can have no possible bearing on the claims or defense of a party." *VoteAmerica v. Schwab*, No. 21-2253-KHV-GEB, 2022 WL 1801059, at *2 (D. Kan. June 2, 2022).

"If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Ramsey v. Snorkel Int'l, Inc.*, No. 2:23-CV-2468-EFM-TJJ, 2024 WL 1834365, at *2 (D. Kan. Apr. 26, 2024). If relevancy is not apparent on its face, the party seeking discovery has the burden to demonstrate that the requests are relevant. *Sperry*, 2020 WL 5642343 at *3.

"[D]iscovery must be both relevant and proportional to the needs of the case." *VoteAmerica*, 2022 WL 1801059, at *3. Whether information is proportional to the needs of the case depends upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

5

likely benefit." Fed. R. Civ. P. 26(b)(1); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) (citation omitted).

If a party claims that a discovery request is unduly burdensome, that party must show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery." *KPH Healthcare Servs., Inc. v. Mylan, N.V.*, No. 20-CV-02065-DDC-TJJ, 2022 WL 17250193, at *2 (D. Kan. Nov. 28, 2022). Typically, this must be established by "an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.*

## III. Analysis

Although the parties previously agreed that Defendants would produce a smaller sample of 144 calls relating to ten (10) class members for which 135 remain to be produced, Plaintiffs now request that the Court order Defendants to produce phone logs and recordings of phone calls relating to all members pursuant to their original Requests for Production ("RFP").[5] Defendants oppose this motion, arguing that the requested discovery exceeds the scope of RFP 8,[6] is not proportional to the needs of the case because the information sought is, at best, marginally relevant, unduly burdensome, protected by HIPAA, and goes beyond the administrative record.

### A. The Administrative Record

Plaintiffs claim that the requested recordings are part of the administrative record and should be produced in their entirety. Defendants disagree. Plaintiffs' First Amended Complaint encompasses not only an appeal of Defendants' determination of Plaintiff's eligibility for benefits

---

[5] The Plaintiffs stated that there is an "estimated 2,963 potential recordings" between the Defendant Trusts and the 111 class members and allege that Defendants are "able to produce all calls as Plaintiffs had requested in discovery and not just the preliminary sample that had been agreed to earlier." *See* Doc. 300, at 10.

[6] Defendants do not challenge the extent to which the requested discovery is responsive to, or within the scope of, RFPs 9 and 19. Because RFP 19 requested production of all physical or electronic records related to claims made by class member participants and the recordings are kept as electronic records, the Court finds that the requested recordings are responsive to RFP 19 and will not address Defendants' objection relating to the scope of RFP 8.

under ERISA, but also claims for breach of fiduciary duty and violations of other portions of ERISA relating to procedural actions taken by administrators during the claims process. *See generally* Doc. 282. "[I]n ERISA cases seeking review of a denial of ERISA benefits, the court's review is "limited to the administrative record," *i.e.*, the materials compiled by the ERISA plan's administrator in the course of making its decision." *Berges v. Standard Ins. Co.,* 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010). Relevant documents generated or relied upon during the initial claims determination must be disclosed prior to or at the outset of an administrative appeal and relevant documents generated during the administrative appeal - along with the claimant's file from the initial determination - must be disclosed after a final decision on appeal. *See Metzger v. Unum Life Ins. Co of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007) (citing 29 C.F.R. § 2560.503-1(h)(2)(iii) and 29 C.F.R. § 2560.503-1(i)(5)).

Plaintiffs assert that the audio recordings at issue were "part of the administrative record," however, if that were the case, then Plaintiffs would already have access to them because they would have been relied upon by the plan administrator in the course of making its decision. The issue before the Court is not whether Defendants failed to timely provide a copy of the administrative record to Plaintiffs, but instead is whether the audio recordings are responsive to the discovery requests at issue. Consequently, the Court makes no further findings as it pertains to the administrative record and instead addresses the discovery issue that is before the Court.[7]

### B. The Relevance of the Requested Discovery

As mentioned above, relevance in this context is construed broadly, and a moving party

---

[7] In a claim for breach of fiduciary duty under ERISA, a claimant may rely upon evidence outside of the administrative record. *See Scott v. Union Sec. Ins. Co.*, No. 17-2686, 2019 WL 451189, at *7 (D. Kan. Feb. 5, 2019); *see also Harper v. Aetna Life Ins. Co.*, 2019 WL 4015891, at *4. (N.D. Okla. Aug. 26, 2019) (citation omitted) ("In contrast to § 1132(a)(1)(B) claims for benefits, courts generally permit limited extra-record discovery on ERISA breach of fiduciary duty claims"); *also see Jensen v. Solvay Chemicals, Inc.*, 520 F. Supp. 2d 1349, 1356 (D. Wyo. 2007) (finding that breach of fiduciary duty claims under ERISA §502(a)(3) "reverts discovery into the traditional realm" and is not limited to the administrative record"). Because Plaintiffs have asserted a breach of fiduciary duty claim, discovery outside of the administrative record is permitted.

must only demonstrate that the discovery sought is minimally relevant for the burden to shift to Defendants to show why it is either irrelevant or its marginal relevance is outweighed by the burden imposed to produce it.  *Oppenheimer*, 437 U.S. at 351; *Motor Fuel Temp. Sales Practices*, 2009 WL 959493 at *4.  Thus, Plaintiffs have a relatively low bar to meet to establish its initial showing of relevance.

Plaintiffs claim that the recordings sought from Defendants are relevant to their claim that Defendants employ an unwritten 90-day rule in determining whether to extend early-retirement benefits to participants.  Doc. 300, at 4-5.  Specifically, Plaintiffs claim that: (1) the 90-day rule was discussed in recorded calls with class members, (2) the recordings are relevant to Defendants' statute of limitations defense, (3) the recordings are relevant to Plaintiffs' breach of fiduciary duty and disclosure claims, and (4) the recordings are relevant to participants' benefits claims.  Doc. 300, at 4-5.  Additionally, Plaintiffs claim that the Defendants, themselves, believe the recordings are relevant because they "attached a transcript of one such call to their Answer [ ] and utilized the recordings 30 times during Named Plaintiffs' depositions."  *Id.* at 5.

A central issue to Plaintiffs' claims is that they were improperly denied benefits based upon an unwritten 90-day rule employed by Defendants.  Plaintiffs argue that this "rule" was discussed in telephone calls between class members and Defendants have admitted that such a rule was relayed to Plaintiffs on at least a few occasions.  Moreover, Defendants do not allege that the requested phone calls relating to the Plaintiffs' benefits administration has no possible bearing on Plaintiffs' claims.  Because a central claim advanced by Plaintiffs is that Defendants engage in an unwritten 90-day rule which led to the improper administration of Plaintiffs' early retirement benefits and calls regarding an such a rule undisputedly exist, the recordings requested in this motion bear on a central issue to Plaintiff's case.  Accordingly, the Court finds that the Plaintiff has met its burden to show that the discovery requests for recorded calls are relevant on their face and now turns its analysis to whether production of the same is unduly burdensome or disproportionate to the needs of the case.

8

C. **Defendants' Proportionality Objection**

Because the discovery sought is relevant on its face, the Defendants now hold the burden of showing that the discovery sought would impose an undue burden or expense that is disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *See also Andes Capital Fin., L.L.C. v. Crossed Keys, L.L.C.*, No. 21-1270, 2022 WL 2191796, at *3 (D. Kan. June 17, 2022). "The Court's responsibility, using all the information provided by the parties, is to consider [the Rule 26 proportionality] … factors in reaching a case-specific determination of the appropriate scope of discovery." *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *4 (D. Kan. June 12, 2019) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment). No single factor outweighs any other and the Court need not address factors that are not in dispute by the parties. *See id.* (quoting *Oxbow Carbon & Minerals, L.L.C. v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.C. Cir. 2017)). The crux of Defendants' argument focuses on (1) the importance of the discovery in resolving the issues; and (2) the burden and expense of producing the recordings outweighs the benefit. Defendants' response includes brief statements regarding the other proportionality factors including the "importance of the case," relative access to information, and the parties' resources; however, the Court has not been provided with enough substance to grant or deny the requested discovery based upon the statements advanced by the Defendants regarding those factors. Accordingly, the Court's analysis will focus on Defendants' two primary arguments.

First, Defendants claim that Plaintiffs' requested discovery is disproportionate to the needs of the case given the marginal relevance of the discovery requested by Plaintiffs. In other words, Defendants claim that the importance of the discovery in resolving the issues is of marginal relevance due to the low responsive rate of recordings which have already been produced and the fact that such responsive recordings encompass mistaken advice as opposed to an established "rule" employed by Defendants.

9

Defendants claim that recordings which encompass the alleged 90-day rule are anomalies rather than routine practice because only three of the 118 (2.5%) calls produced were responsive to Plaintiffs' request and involved only two class members.[8]  Although it is possible that the calls may establish that incorrect advice has been given regarding an IRS "fact and circumstances" test rather than an automatic rule or practice, such possibility is insufficient to establish that recordings regarding an automatic 90-day rule do not exist.  *See id.*  It is not a plaintiff's burden to come forward with proof that information responsive to a discovery request actually exists.  *See Andes Capital*, 2022 WL 2191796 at *6.  Moreover, claiming that a business' established policies and procedure lack a given "rule" and discovery regarding unwritten rules or procedures are irrelevant is insufficient to establish that discovery is of marginal relevance.  *See In re Cox Enters., Inc. Set-Top Cable Tele. Box Antritrust Litigation*, 2011 WL 13228233, at *2 (W.D. Okla. Oct. 27, 2011).  Additionally, Defendants do not dispute that they used the previously produced 109 recordings thirty times during depositions (Docs. 300; 300-1, Decl., at ¶ 7) and attached a transcript of one such recording to their Answer (Docs. 300, at 7; 300-1, Decl., at ¶ 8).  Therefore, further production of recordings, relating to participants of *Plaintiffs'* choice, may to lead to additional information that is relevant to Plaintiffs' claims regarding the alleged 90-day rule.  *See Ad Astra Recovery Servs.*, 2019 WL 4466903 at *4.  Because the requested recordings readily bear on a central issue to Plaintiffs' case, recordings regarding an unwritten 90-day rule exist, and Defendants, themselves, have used calls relating to Plaintiffs' benefits administration on numerous prior occasions, the Court finds that the requested recordings are of more than marginal relevance and production of an additional sampling of recordings is important and beneficial to the case.

The burden on the Defendants to produce Plaintiffs' requested discovery is hotly disputed.

---

[8] According to Defendants, Plaintiff Phillips was notified in December 2018 that "he had to wait 90 days before returning to work" and Plaintiff Murphy was told of such a rule in December 2018 but that statement was corrected in a subsequent call in January 2018.  Doc. 303, at 6.

Defendants claim that production of the remaining 135 recordings of the preliminary sample for the 10 selected class members would take an employee approximately two weeks of full-time work (80 hours) to identify and locate relevant recordings, export and upload the files to a database, develop and refine ten separate protocols for searching the database, review all "hits" from those protocols, and engage in ten separate quality control analyses and pre-production reviews before producing the recordings. Defendants claim the cost of producing the remaining 135 recordings using their e-discovery vendor would total nearly $34,000. Defendants have not produced information regarding the burden of producing all 2,963 potential recordings related to all 111 class members. However, based upon the estimate time and cost of producing the 135 recordings from the preliminary sample produced by Defendants, it would take an average of 36 minutes and cost $250 to produce each recording. Extrapolating these totals to the larger sample of 2,963 recordings, it would take approximately 1,753 hours (nearly 44 weeks of full-time work) and cost approximately $740,750 to produce such sample.[9] The Court finds that the over 1,700 hours required to produce the nearly 3,000 total calls is unduly burdensome. However, this Court is not persuaded that cost and expense to produce the remaining 135 recordings outweighs the 80 hours required to produce the remaining 135 recordings requested in the initial sample is unduly burdensome.

Although there is no hard-and-fast rule as to what time commitment constitutes an undue burden, courts have typically required a much steeper estimated time commitment than 80 hours for a request to qualify as overly burdensome. *See Ronquillo-Griffin v. Transunion Rental Screening Solutions, Inc.*, No. 17CV129-JM (BLM), 2018 WL 325051, at *5 (S.D. Cal. Jan. 8, 2018) (200 8-hour work days

---

[9] "In the typical case, 'responding parties are best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronic data[.]'" *Cashe La Poudre Feeds, L.L.C. v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 628 (D. Colo. 2007) (quoting The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, at 31 (Sedona Conference Working Group Series July 2005)). This Court's analysis of the relevant burden and cost will therefore be based upon Defendants' proposed e-discovery methods and the accompanying estimates of time and cost.

11

required to locate 906 calls was unduly burdensome); *see also Gen. Steel Domestic Sales, L.L.C v. Chumley*, 2011 WL 2415715, at \*2 (D. Colo. June 15, 2011) (193 40-hour work weeks required to locate 463,000 calls was overly burdensome).

Moreover, where a plaintiff is willing to compromise by limiting the requested production to hundreds of calls as opposed to thousands, courts are more inclined to grant a plaintiff's motion to compel. *See Cox Enters.*, 2011 WL 13228233 at \*2. A similar issue was addressed in *Ad Astra Recovery Servs v. Heath*, where the plaintiffs sought audio recordings of phone calls regarding whether defendant's clients consented to defendant's disputing debts plaintiff was attempting to collect on their behalf. No. 18-1145-JWB-ADM, 2019 WL 4466903, at \*4 (D. Kan. Sept. 18, 2019). In *Ad Astra*, a submitted declaration stated that it would take over 200 hours to "download, listen to, and edit [approximately 600] calls [related to approximately 50 consumer clients] to exclude non-responsive information and attorney-client privileged communications." *Id.* The Court determined that neither parties can determine the contents or importance of the recordings without at least a sampling and ordered the Defendants to produce recordings relating to ten clients of the plaintiffs' choice. *Id.* at 5.

Defendants state that less than three percent of the 118 calls already produced were responsive to limitations on post-early retirement work. To Defendants' credit, "TAR is not as simple as loading the dataset and pushing a magic bottom to identify the relevant and responsive documents," rather, multiple individuals must "'educate' and 'train' the productive algorithm." *Lawson*, 2020 WL 3288058 at \*19. Where the dataset is rather voluminous and there is a low responsive rate, "human reviewers may have a difficult time training the software on what is relevant." *Id.* However, Defendants' reliance on *Lawson* in this context is misplaced. *Lawson* involved a dataset of over 322,000 documents for review that specified by custodians and search terms, *id.* at 20, while Defendants here have stated that class members would have an average of 25

12

calls per class member (Doc. 303, at 4) totaling roughly 250 calls for the preliminary sample of 10 custodians, and less than 3,000 calls for all 111 class members. The burden Defendants face here is hardly analogous to the burden contemplated by *Lawson*. This is especially true with regard to the remaining 135 calls of preliminary sample. The Court finds that the time and expense required to produce the nearly 3,000 calls relating to all 111 class members is unduly burdensome in relation the likely benefit of the recordings. However, the Court does not find that that the burden or expense to produce the remaining 135 of the sample Defendants previously agreed to produce is so burdensome as to preclude discovery.

Lastly, Defendants argue that issues relating to HIPAA compliance increase the burden of producing the requested recordings. Defendants state that Wilson-McShane, their Third-Party Administrator, logs and holds recordings of calls from Pension Trust Defendant, as well as the non-party Annuity and National Health & Welfare Funds. Defendants assert that the TPA possesses the audio recordings and any associated personal health information contained therein. Defendants argue that because the Annuity National Health & Welfare Funds are not parties to this action, it does not have a right to disclose this information nor can it compel the third party to produce PHI for the other Funds. Defendants argue that "compliance with HIPAA will require the TPA (on behalf of the [Trust]) to undertake a very careful and time-consuming review of each of the calls to filter any PHI that is neither relevant to these proceedings nor part of the [Trust's] own PHI."

Defendants are responsible for the way in which they choose to store and maintain recordings of calls with plan participants. The fact that recordings related to Defendant Trust are held alongside non-party Funds in a third-party system does not create a burden that precludes production. *See Motor Fuel Temp. Sales Practices Litig.*, WL 959493, at *3 ("The fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents, is not a sufficient reason to prevent disclosure of otherwise discoverable material")

13

(citation omitted).  Plaintiffs have not requested recordings, with associated PHI, from the non-party Funds.  Likewise, the Court is not directing Defendants to produce PHI held by third parties.  Defendants' objection on HIPAA grounds is therefore overruled.

## IV.     Conclusion

To summarize, the Court finds that the requested recordings, on their face, are relevant and important to the case, but that requiring production of calls related to all 111 class members is disproportionate to the needs of the case because of the time and expense required for such production.  The Court finds that production of a sampling, as previously agreed upon, is not disproportionate to the needs of the case and orders production of the same.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to compel, Doc. 300, is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants produce the remaining 135 recordings from the previously agreed upon sample to Plaintiffs by **August 19, 2024**.[10]

**IT IS SO ORDERED.**

Dated July 18, 2024, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge

---

[10] In the parties' respective briefs, they spent considerable time arguing about the cost of production if e-discovery vendors were utilized to produce the recordings.  Although the Court orders Defendants to produce approximately 135 recordings, the Court declines to instruct Defendants as to how they are to fulfill that production.  Defendants can exercise discretion in determining how to produce the recordings, provided the production is complete no later than August 19, 2024.